FILED

DEC 1 8 2012

USDC WP SDNY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MARK R. TOWBIN, individually and on behalf          :      Civil Action No.:
of all others similarly situated,                   :
                                                    :
                                    Plaintiff,      :      **CLASS ACTION**
                                                    :      **COMPLAINT**
            vs.                                     :
                                                    :      12 CV 9193
CELLCO PARTNERSHIP d/b/a/ VERIZON                   :
WIRELESS,                                           :      **ECF CASE**
                                                    :
                                    Defendant.      :      JUDGE RAMOS
-------------------------------------------------------------------X

Plaintiff Mark R. Towbin ("Plaintiff"), individually and on behalf of the two plaintiff

classes identified herein, by his undersigned attorney, alleges upon personal information as to

himself, and upon information and belief as to all other allegations, for his Class Action

Complaint ("Complaint") against Defendant Cellco Partnership d/b/a Verizon Wireless

("Verizon"), as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action, individually and as a class action pursuant to Fed. R.

Civ. P. 23(a) and (b), asserting claims for relief on behalf of the following two classes:

(a)      A Rule 23(b)(2) class, comprised of all Verizon wireless telephone

customers, seeking a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-

2202, that the application of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), to their

claims for liability under state law for breach of contract and consumer fraud based on Verizon's

practices in connection with its imposition of the Administrative Charge (as further described

herein) violates Article III of the United States Constitution ("Declaratory Judgment Class").

1

(b)      A Rule 23(b)(3) class, comprised of all Verizon wireless telephone customers whose wireless phones have a New York State area code, seeking damages and other amounts awardable under New York law for breach of contract and consumer fraud based on Verizon's practices in connection with its imposition of the Administrative Charge ("New York Class").

2.      Under the terms of Verizon's standard form Customer Agreement, Verizon agrees to provide its customers with agreed-upon service for an agreed-upon price.   The Customer Agreement also entitles Verizon to collect taxes, fees and other charges that government entities require Verizon to bill its customers and remit to the entities.   The Customer Agreement additionally entitles Verizon to impose surcharges that are not charges government entities require Verizon to bill its customers and remit to the entities, but are discretionary recoveries of amounts Verizon pays in connection with government mandated and government related programs, such as the Federal Universal Service Charge and the Regulatory Charge.

3.      Beginning in October, 2005, Verizon began imposing on all of its wireless phone customers a newly-minted, per-line, monthly "administrative charge" surcharge (the "Administrative Charge").    From the first time Verizon disclosed the existence of its Administrative Charge in its Customer Agreement, monthly bills and other customer information, and continuing up to and including the present, Verizon's descriptions of the Administrative Charge have consistently directly stated or strongly implied that it was being imposed for the recovery of government mandated or government related costs.   In reality, however, the Administrative Charge is a discretionary pass-through of Verizon's general costs that is utilized by Verizon to effectuate a concealed increase in the agreed-upon monthly rate for service.

4.      When first implemented in October 2005, Verizon's Administrative Charge was $0.40 monthly per line, and was imposed on approximately 50 million lines, generating new revenues for Verizon of approximately $20 million monthly and $240 million annually.   In March 2007, the Administrative Charge was increased by Verizon by 75%, to $0.70 per line – supposedly to recover the same costs as when it was implemented at $0.40 per line in 2005 – and was imposed on some 60 million lines, generating revenues of approximately $42 million monthly and $500 million annually.   The Administrative Charge has been periodically changed, and presently is $0.99 and is imposed on some 92.2 million lines, generating revenues for Verizon of approximately $91.3 million monthly and almost $1.1 billion annually.   The total Administrative Charges Verizon has collected since October, 2005 are estimated to exceed $4.8 billion.

5.      Although from the inception of the Administrative Charge to the present Verizon's Customer Agreement, monthly bills and other customer disclosures have consistently directly stated or strongly implied that the Administrative Charge was imposed for the recovery of government mandated or government related costs, Verizon admitted in December, 2007 in prior federal court proceedings in the District of New Jersey that Verizon, in fact, was using the Administrative Charge to "recove[r] general costs it incurred to provide service," including "the costs of building new cell sites."

6.      Contemporaneous with Verizon's admission in the District of New Jersey that the Administrative Charge was not being used to recover government mandated or government related costs but instead was being used to "recover general costs," a federal court judge in a different judicial proceeding to which Verizon also was a party that was pending in the Western District of Washington confirmed, albeit unknowingly, that Verizon's Customer Agreement,

monthly bills and other customer disclosures are deceptive and misleading. This District Court judge, when analyzing the same Customer Agreement and billing and disclosure documents provided to Verizon's customers that were at issue in the District of New Jersey action -- and in this action as well -- concluded without qualification in a published opinion that the Administrative Charge "unambiguously" was supposed to be a recovery of "governmental-surcharge-related costs." *Smale v. Cellco P'shp d/b/a Verizon Wireless,* 547 F. Supp. 2d 1181, 1186 (W.D. Wash. 2008).

7.      That a federal judge could misunderstand, and be deceived and misled, by the same uniform Customer Agreement and billing and disclosure documents provided to Verizon's customers that are at issue in this action confirms that Verizon's practices regarding the Administrative Charge are deceptive and misleading as a matter of law, as well as a breach of the "unambiguous" Customer Agreement restricting the Administrative Charge to the recovery of government mandated and government related costs, because the Administrative Charge is being utilized by Verizon to recover general costs and to effectuate a concealed increase in the agreed-upon monthly rate for service.

## JURISDICTION AND VENUE

8.      The Court has original federal diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), for the following reasons:

(a)      The members of the proposed plaintiff classes number 100 or more;

(b)      There is diversity of citizenship between any one member of each plaintiff class (named and unnamed) and Verizon. Plaintiff resides in and is a citizen of New York, and Verizon is a general partnership-unincorporated association organized under the laws of

Delaware with its principal place of business in New Jersey, and thus is deemed a citizen of Delaware and New Jersey under CAFA § 1332(d)(10).   Additionally, Verizon has tens of millions of wireless phone customers who are citizens of states other than New Jersey and Delaware, including in New York and nationwide, and these customers all have been subjected to the same wrongful acts as Plaintiff based on Verizon's practices in connection with its imposition of the Administrative Charge.

(c)     The amount in controversy – which may be calculated by aggregating the claims of the putative class members – exceeds the sum or value of $5 million, exclusive of interest and costs.

9.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(c), based on Verizon's "systematic and continuous" business presence within New York State and this District.

## THE PARTIES

10.     Plaintiff Mark R. Towbin resides in Dobbs Ferry, Westchester County, New York.  Plaintiff is a Verizon wireless telephone customer with a New York State area code who has been charged and paid the Administrative Charge that is the subject of this action.

11.     Verizon is a general partnership organized under the laws of Delaware with its principal place of business in New Jersey.  According to the Form 10-K for the annual period ending December 31, 2011 filed with the Securities and Exchange Commission ("SEC") by Verizon's parent company, Verizon Communications, Inc., Verizon is "the largest wireless service provider in the United States, as measured by total number of customers and revenue.  At December 31, 2011, Verizo[n] had 92.2 million retail customers and 2011 revenues of approximately $70.2 billion[.]"

**THE APPLICATION OF THE FAA TO THE STATE LAW CLAIMS OF
PLAINTIFF AND VERIZON'S OTHER CUSTOMERS BASED ON
VERIZON'S ADMINISTRATIVE CHARGE PRACTICES VIOLATES
ARTICLE III OF THE UNITED STATES CONSTITUTION**

12.     Under CAFA's grant of original jurisdiction, 28 U.S.C. § 1332(d), Plaintiff and

all of Verizon's other customers have the right to invoke the judicial power of the Article III

courts for the adjudication of their state law claims for liability against Verizon based on

Verizon's Administrative Charge practices, and the Article III courts have been given the

authority to exercise the essential attributes of the Article III judicial power in adjudicating these

claims.

13.     Verizon's standard form Customer Agreement, however, includes an Arbitration

Agreement requiring Plaintiff and all of Verizon's other customers "TO RESOLVE DISPUTES

OJNLY BY ARBITRATION" "BY ONE OR MORE NEUTRAL ARBITRATORS," and further

states and confirms that "THE FEDERAL ARBITRTATION ACT APPLIES TO THIS

AGREEMENT."   A complete copy of the current Verizon Customer Agreement with the

included Arbitration Agreement is attached as Exhibit A to this Complaint.

14.     Insofar as Verizon's Arbitration Agreement is enforceable under the FAA, then

the FAA deprives Plaintiff and all of Verizon's other customers of their right to an Article III

tribunal and the essential attributes of the Article III judicial power for the adjudication of their

state law claims for breach of contract and consumer fraud.  Furthermore, the FAA not only

takes the exercise of the essential attributes of the judicial power from the Article III Judiciary,

but by its terms both limits *and dictates* how the Article III judicial power can and *must* be

exercised by the Article III courts in connection with these claims.

15.     As applied to the state law claims of Plaintiff and Verizon's other customers

against Verizon for breach of contract and consumer fraud based on Verizon's Administrative

Charge practices, the FAA fails to satisfy even one of the factors considered by the Supreme Court in previously upholding Congress' delegation of the Article III judicial power to a non-Article III adjudicator, as most recently codified in *Stern v. Marshall,* 131 S. Ct. 2594 (2011):

(a)     First, the state law claims of Plaintiff and Verizon's other customers against Verizon for breach of contract and consumer fraud based on Verizon's Administrative Charge practices are matters "of private right, that is, of the liability of one individual to another under the law as defined," and do not involve the federal government or a federal regulatory scheme from which a "public right" sufficient to support the delegation to a non-Article III adjudicator can be extrapolated.

(b)     Second, the non-Article III arbitration forum bears no meaningful resemblance to and has none of the hallmarks of the Article III forum.  Most arbitrators are not and have never been judges, and arbitrators need not even be lawyers.   Under the American Arbitration Association's Wireless Industry Arbitration Rules identified in the Arbitration Agreement, many of the arbitrators who serve on the arbitration panels are economically dependent on the same telecommunications industry in which Verizon is one of the largest members, and the essential attribute of the independence of the Article III Judiciary as the "guardian of individual liberty" is non-existent.

(c)     Third, the FAA prevents Article III judges from exercising any genuine control over the non-Article III proceedings.

(i)     The arbitral award is, in all material respects, final.  There is no meaningful right of appeal to the Article III court where questions of law can be reviewed *de novo* and questions of fact for clear error.  As stated by the Supreme Court in *AT&T Mobility LLC v. Concepcion,* 131 S. Ct. 1740, 1752 (2011):

[Section 10 of the FAA] allows a court to vacate an arbitral award *only* [emphasis in original] where the award "was procured by corruption, fraud, or undue means"; "there was evident partiality or corruption in the arbitrators"; "the arbitrators were guilty of misconduct in refusing to postpone the hearing ... or in refusing to hear evidence pertinent and material to the controversy[,] or of any other misbehavior by which the rights of any party have been prejudiced"; or if the "arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award ... was not made." The AAA rules do authorize judicial review of certification decisions, *but this review is unlikely to have much effect given these limitations* [emphasis added]; review under § 10 focuses on misconduct rather than mistake.

(ii)     The FAA affirmatively prevents parties to an arbitration agreement from bargaining for and agreeing to expand the grounds or nature of judicial review to authorize the Article III court to vacate the award where, for example, "the arbitrator's findings of facts are not supported by substantial evidence," or "the arbitrator's conclusions of law are erroneous." *Hall Street Assocs. v. Mattel, Inc.,* 552 U.S. 576 (2008).

(iii)     The Article III courts are required to enter their judgments even if they are convinced that the arbitral decision is infected with "serious" factual or legal error. Thus, by depriving the Article III courts of their Article III authority to say what the law is, and by requiring them to enter judgments on arbitral awards that are seriously factually or legally erroneous, the FAA unconstitutionally mandates a rule of decision. *United States v. Klein,* 80 U.S. 128 (1871).

(d)     Fourth, Plaintiff and Verizon's other customers did not voluntarily consent to arbitration.

(i)     Verizon's Arbitration Agreement was not entered into voluntarily by Plaintiff and Verizon's other customers, and was not bargained for.  Rather, it was unilaterally demanded and adhesively imposed by Verizon as a non-negotiable condition precedent to the ability of Plaintiff and all of Verizon's more than 92 million other customers to receive one of

the most basic utilities – reliable wireless telecommunications services.   Under the FAA,
Verizon's unilateral and adhesively imposed demand for arbitration is required to be enforced by
the federal courts.

(ii)     Furthermore, because arbitration also is unilaterally demanded and
adhesively imposed without bargaining by AT&T Mobility, Sprint and T-Mobile, then Verizon
and these other quadropolists -- whose total United States wireless telephone subscribers number
well in excess of 250 million and comprise 95% or more of the entire United States wireless
telephone market -- have eliminated any meaningful choice regarding arbitration for the vast
majority of all citizens and residents of the United States.

(e)     Fifth, the legislative purpose of the FAA was to prevent merchants and
other businesses that had bargained for and *voluntarily* entered into arbitration agreements from
being able to walk away from the arbitration when they didn't like the way it was going, or from
refusing to comply with the arbitration award.   Arbitration under the FAA was intended to be,
and is supposed to be, "a matter of consent, not coercion." *Stolt-Nielsen S.A. v. AnimalFeeds
Int'l Corp.,* 130 S. Ct. 1758, 1773 (2010).   The legislative history of the FAA includes multiple
references to the fact that arbitration under the FAA is supposed to be voluntary.   It was *not* the
legislative purpose of the FAA to force 92.2 million Verizon customers, or more than 250
million wireless telephone customers nationwide, to adhesively, involuntarily and individually
arbitrate their small monetary state law claims regarding the Administrative Charge or
comparable wrongful and deceptive consumer practices with some of the largest, multi-billion
dollar, businesses in the United States.

(g)     Sixth, under the FAA as applied to the state law claims of Plaintiff and all
of Verizon's other customers, as well as to the vast majority of all other United States wireless

telephone customers, Congress, in effect, has "created a phalanx of non-Article III tribunals equipped to handle the entire business of the Article III courts without any Article III supervision or control," *Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 855 (1986), thereby effecting the wholesale elimination of the ability of the Article III courts to exercise their jurisdictional authority under CAFA with respect to a mammoth portion of private rights.

16.     Plaintiff will not voluntarily participate in arbitration in connection with his state law claims against Verizon for breach of contract and consumer fraud based on Verizon's Administrative Charge practices unless and until the federal courts determine that the application of the FAA to these claims does not violate Article III, and affirmatively compel Plaintiff under the FAA to arbitrate involuntarily and unwillingly.

## STATEMENT OF FACTS

17.     Under the terms of Verizon's standard form Customer Agreement (Exhibit A), Verizon agrees to provide its customers with agreed-upon service for an agreed-upon price.  The Customer Agreement also entitles Verizon to collect taxes, fees and other charges that government entities require Verizon to bill its customers and remit to the entities.  The Customer Agreement additionally entitles Verizon to impose surcharges that are not charges government entities require Verizon to bill its customers and remit to the entities, but are discretionary recoveries of amounts Verizon pays in connection with government mandated and government related programs, such as the Federal Universal Service Charge and the Regulatory Charge.

A.     **Verizon Has Imposed Approximately $4.8 Billion Of Administrative Charges On Its Customers From Inception To The Present**

18.     When Verizon's monthly Administrative Charge was first implemented as of October 1, 2005, it was in the amount of $0.40 per line, and was imposed on approximately 50 million lines, generating new revenues for Verizon of approximately $20 million monthly and

$240 million annually. In March, 2007, the Administrative Charge was increased by Verizon by 75%, to $0.70 per line -- supposedly to recover the same costs as when it was implemented at $0.40 a line seventeen months earlier in 2005 -- and was imposed on some 60 million lines, generating revenues of approximately $42 million monthly and $500 million annually.

19.    Since the time of its first increase to $0.70 in March 2007, Verizon has continued to change the amount of the monthly Administrative Charge periodically. Beginning in or around May, 2008, the charge was increased by $0.15, to $0.85. Effective July 1, 2009, it was increased again, by $0.07, to $0.92. Beginning on May 13, 2010, the Administrative Charge was reduced by $0.09, from $0.92 to $0.83.[1] And effective January 1, 2012, the Administrative Charge was increased by $0.16, to $0.99, its present amount.

20.    Thus, assuming one line each for the 92.2 million customers as disclosed in the Form 10-K for the annual period ending December 31, 2011 filed with the SEC by Verizon's parent company, Verizon Communications, Inc., Verizon's Administrative Charge currently generates revenues of approximately $91.3 million monthly and almost $1.1 billion annually.[2] All told, from its inception in October 2005 through November 2012, the Administrative Charge has resulted in approximately $4.8 billion of additional revenues to Verizon.

21.    Additionally, assuming conservatively that the percentage of Verizon's United States retail customers with New York area codes corresponds to New York's percentage of the United States population (6.2%), the New York Class consists of 5.7 million customers having paid approximately $300 million of Administrative Charges from its inception through

---

[1]    On the same date, May 13, 2010, Verizon increased its separate monthly Regulatory Charge line item surcharge by the exact same $0.09, from $0.07 to $0.16.

[2]    According to the Verizon Communications, Inc. Form 10-Q for the quarter ending September 30, 2012, Verizon now has 95.9 million retail customer "connections."

November 2012.  In light of New York's demographics, it is likely these numbers are significantly higher.

**B.**   **Verizon's Customer Agreement And Monthly Bills And Other Customer Disclosures Regarding The Administrative Charge Describe It As A Recovery Of "Government Mandated" Or "Government Related" Costs**

22.   From the first time Verizon disclosed the existence of its Administrative Charge in Verizon's standard form Customer Agreement, monthly bills and other customer information, and up to and including the present, Verizon's descriptions of the Administrative Charge have consistently directly stated or strongly implied that it was for the recovery of government mandated or government related costs.

1.   **Verizon's Disclosures Preceding the Current Version**

23.   At the time Verizon implemented the Administrative Charge in October, 2005, there was no reference to it in the section of the Customer Agreement regarding Verizon's imposition of governmental related charges and fees set by Verizon, only the Federal Universal Service Charge and the Regulatory Charge:

> You agree to pay all access, usage and other charges and fees we bill you or that the user of your wireless phone accepted, even if you weren't the user of your wireless phone and didn't authorize its use. *These include Federal Universal Service Charges and Regulatory Charges, and may include other charges also related to our governmental costs.*  We set these charges.  They aren't taxes, aren't required by law, are kept by us in whole or in part, and are subject to change. . . . (emphasis added)

24.   Verizon's Customer Agreement was amended in November, 2006 to specifically reference the Administrative Charge as one of the government related charges set by Verizon, and subject to a revision in September 2011, discussed *infra,* has remained substantially the same:

> You agree to pay all access, usage and other charges and fees we bill you or that the user of your wireless phone accepted, even if you weren't the user of your

wireless phone and didn't authorize its use. *These include Federal Universal Service, Regulatory and Administrative Charges, and may include other charges also related to our governmental costs.* We set these charges. They aren't taxes, aren't required by law, are kept by us in whole or in part, and are subject to change. . . . (emphasis added)

25.     Once the Administrative Charge was implemented in October, 2005, Verizon described it within the section entitled "Explanation of Charges" under a subtitle "Verizon Wireless' Surcharges" on Page 2 of the monthly customer bill.   Subject to a revision in January 2012, discussed *infra*, the bill description regarding the Administrative Charge has remained substantially the same:

Verizon Wireless' Surcharges *include charges to recover or help defray costs of taxes and of governmental charges and fees imposed on us, including a Regulatory Charge* (which helps defray costs of various regulatory mandates, including government number administration and license fees) *and a Federal Universal Service Charge* (and if applicable, a State Universal Service Charge) to recover costs imposed on us by the government to support universal service, *and may include other charges also related to our government costs. It also includes an Administrative Charge,* which helps defray certain costs we incur, currently including: (i) charges we, or our agents, pay local telephone companies for delivering calls from our customers to their customers; (ii) fees and assessments on network facilities and services; and (iii) certain costs and charges associated with proceedings related to new cell site construction.  Please note that these are Verizon Wireless Charges, not taxes that we are required to collect from you. These charges, and what's included, are subject to change from time to time. (emphasis added)

26.     These  customer  disclosures  directly  state  or  strongly  imply  that  the Administrative Charge had been imposed to recover government mandated or related costs.[3]

---

[3]       Although apparently not in current use, during at least some of the period in and around 2007, Verizon also provided its new customers with a standard form document or brochure with the Customer Agreement on one side and a "Customer Information Overview" on the other side.  The "Customer Information Overview" included a section entitled "Verizon Wireless' Surcharges" stating the following regarding the Administrative Charge:

Your bill will include *charges to recover or help defray costs of taxes and of governmental surcharges and fees imposed on us, and costs associated with government regulations and mandates on our business. The charges include* a Regulatory Charge, which helps defray costs of various mandates, *an Administrative Charge* and a Federal Universal Service Charge to recover costs imposed on us by the government to support universal service. These charges are Verizon Wireless charges, not taxes, and are subject to change. (emphasis added)

27.     However, a close examination of the descriptions in the "Explanation of Charges" section of Verizon's customer bills of the purported costs identified as the basis for its Administrative Charge, quoted *supra,* shows that, while the costs are all "official sounding," none of them appears to be government related:

(a)     The "charges we, or our agents, pay local telephone companies for delivering calls from our customers to their customers" are not government related.  In fact, because Verizon's parent, Verizon Communications, Inc., owns local telephone companies that deliver calls from Verizon to other customers, it is possible that Verizon is using the Administrative Charge to recover charges it is paying to its own affiliates and parent company.

(b)     The "fees and assessments on network facilities and services" could be government related, but it is impossible to know because they are unspecified, and no specific government program is identified.  In any case, it is misleading to commingle administrative costs with fees actually paid to the government under government mandated or related programs.

(c)     The "certain costs and charges associated with proceedings related to new cell site construction" include Verizon's general costs of building the new sites, as Verizon admitted in prior legal proceedings in the District of New Jersey, referenced generally in the Nature of the Action, *supra,* and discussed in detail, *infra.*  Apart from that, the reference to "proceedings" gives the description a certain "legal or governmental flavor," but even so, there is no reason to believe these costs are government related.

28.     Furthermore, Verizon's prior Customer Agreement, "Explanation of Charges" monthly billing disclosure and Customer Information Overview expressly state and deceptively

imply that the Administrative Charge is being used to recover "administrative" costs -- that is, costs that are genuinely administrative in nature and incurred in connection managing, tendering and accounting for payments made by Verizon under government mandated or related programs.

**2.** **The Current Version of Verizon's Customer Agreement and Monthly Bills and Other Customer Disclosures Regarding the Administrative Charge**

29.     Verizon revised its standard form Customer Agreement regarding the Administrative Charge effective September 13, 2011, which beginning then and in its current form states as follows:

> You agree to pay all access, usage and other charges that you or the user of your wireless device incurred.  For [Service for which usage charges are billed at the end of the billing period], *our charges also include Federal Universal Service, Regulatory and Administrative Charges, and we may also include other charges related to our governmental costs.* We set these charges; they aren't taxes, they aren't required by law, they are not necessarily related to anything the government does, they are kept by us in whole or in part, and the amounts and what they pay for may change.  (emphasis added)

30.     Additionally, the "Explanation of Charges" regarding the Administrative Charge in the standard form monthly customer bill was revised on or around January 1, 2012, which beginning then and in its current form states as follows:

> Verizon Wireless' Surcharges include (i) a Regulatory Charge (which helps defray various government charges we pay including government number administration and license fees); (ii) a Federal Universal Service Charge (and, if applicable, a State Universal Service Charge) to recover charges imposed on us by the government to support universal service; and (iii) *an Administrative Charge, which helps defray certain expenses we incur, including* charges we or our agents pay local telephone companies for delivering calls from our customers to their customers, fees and assessments on our network facilities and services, and costs and charges associated with new cell site construction, local number portability, *and other government mandates.*  Please note that these are Verizon Wireless charges, not taxes.  These charges, and what's included, are subject to change from time to time.  (emphasis added) [4]

---

[4]     Verizon repeats this disclosure verbatim on the "Frequently Asked Billing Questions" page of its website: http://support.verizonwireless.com/clc/faqs/Account%20Management/faq_billing.html

31.     Thus, in its current form, Verizon's Customer Agreement expressly and deceptively states that Verizon's charges include "Federal Universal Service, Regulatory and Administrative Charges, and . . . other charges related to our governmental costs," and Verizon's "Explanation of Charges" monthly billing disclosure, and its Frequently Asked Questions website posting, expressly state that the Administrative Charge is being used to "defray [the identified charges and costs] and other government mandates."

32.     Furthermore, as with its prior customer disclosures, Verizon's current Customer Agreement, "Explanation of Charges" monthly billing disclosure and Frequently Asked Questions website posting expressly state and deceptively imply that the Administrative Charge is being used to recover "administrative" costs -- that is, costs that are genuinely administrative in nature and incurred in connection managing, tendering and accounting for payments made by Verizon under government mandated or related programs.

**C.     Verizon Admits In Prior Legal Proceedings In The District Of New Jersey That The Administrative Charge Is Being Used To Recover General Costs**

33.     In October 2007, Verizon customers Keith Litman and Robert Wachtel (also then represented by Plaintiff's counsel herein) commenced a class action against Verizon in the United States District Court for the District of New Jersey asserting claims for breach of contract and violations of the New Jersey Consumer Fraud Act based on Verizon's imposition on all of its customers of the Administrative Charge beginning in October, 2005.  *Litman, et al v. Cellco P'shp d/b/a Verizon Wireless,* No. 07-CV-4886 (D.N.J.) ("*Litman*").  As in the instant action, the *Litman* complaint alleged that the Administrative Charge is a discretionary pass-through of Verizon's general costs, and was implemented and utilized by Verizon to effectuate a concealed increase in the agreed-upon monthly price for service.

34.     Although Verizon challenged the sufficiency of the *Litman* complaint on the merits by motion to dismiss, its principal line of defense was to move under the FAA to compel the *Litman* plaintiffs to arbitrate their claims on an individual basis rather than litigate on a class-wide basis under a provision inserted by Verizon in the arbitration agreement included within the Customer Agreement to preclude the assertion of class claims.

35.     Verizon's motion to compel arbitration was successful in the New Jersey District Court, which upheld the enforceability of the class action preclusion clause under the FAA and compelled the parties to arbitrate. *Litman,* 2008 WL 4507573 (D.N.J. Sept. 29, 2008).  The *Litman* plaintiffs appealed, and in May, 2010, the United States Court of Appeals for the Third Circuit reversed the decision of the District Court, holding that the class action preclusion clause was unconscionable and unenforceable under the contract law of New Jersey, and that this New Jersey law was not preempted by the FAA. *Litman,* 381 Fed. Appx. 140 (3d Cir. May 21, 2010). Thereafter, in September 2010, Verizon filed a petition for *certiorari* with the United States Supreme Court from the judgment of the Third Circuit.

36.     On April 27, 2011,  the Supreme Court handed down its five to four decision in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011), holding that the FAA preempted the California state contract law under which AT&T's class action preclusion clause similar to Verizon's was unconscionable and unenforceable.  Thereafter, on May 2, 2011, the Supreme Court granted Verizon's petition for *certiorari* in *Litman*, vacated the Third Circuit's prior decision, and remanded the case back to the Third Circuit for further consideration in light of *Concepcion.  See Cellco P'shp d/b/a Verizon Wireless v. Litman,* No. 10-398, 131 S. Ct. 2872 (2011).

37.    Applying *Concepcion* on remand, on August 23, 2011 the Third Circuit reversed its May 23, 2010 decision in *Litman* and held that the FAA preempted the New Jersey law that would have rendered Verizon's class action preclusion clause unconscionable and unenforceable. *See Litman,* 655 F.3d 225 (3d Cir. 2011).  The Supreme Court subsequently denied the petition by the *Litman* plaintiffs for *certiorari*, on January 9, 2012.  *See Litman v. Cellco Psh'p,* No. 11-644, 132 S. Ct. 1046 (2012).

38.    Although the *Litman* plaintiffs were unsuccessful in their efforts to judicially address the propriety of Verizon's imposition of the Administrative Charge on the merits, the briefing on Verizon's motion to dismiss resulted in a development that is highly relevant to the instant Complaint.  Specifically, in opposition to the allegations of the *Litman* complaint that Verizon's imposition of the Administrative Charge was a deceptive and misleading concealed price increase, Verizon *admitted* that it was using the Administrative Charge to "recove[r] general costs it incurred to provide service," including "the costs of building new cell sites," stating the following in its December 10, 2007 District Court brief (*see Litman,* Docket Entry # 9-2, December 10, 2007, at pp. 28-29 (Exhibit B hereto)):

> In fact, Plaintiffs' own allegations demonstrate that the Notice [regarding the implementation of the Administrative Charge] was clear, understandable, and completely accurate.  As alleged, the Notice stated that the charge "will help defray certain costs" to Verizon, including "fees and assessments on network facilities and services" and *the costs of building new cell sites.* Compl. ¶ 21(b).  *In other words, Verizon disclosed that it was recovering general costs it incurred to provide service.* Although Plaintiffs claim the Notice was misleading, they admit they understood the charge to be a "pass-through" of general costs to Verizon. Id. 22, 34(iii).    Given the disclosures Plaintiffs themselves cite, no reasonable consumer could have believed that the Administrative Charge was a government mandated tax or fee. (emphasis added)

**D.    A Federal District Court Is Misled About The True Nature Of The Administrative Charge**

39.    As noted in the Nature of the Action, *supra,* while *Litman* was pending in the United States District Court for the District of New Jersey, a federal District Court judge, Judge Richard A. Jones of the United States District Court for the Western District of Washington, issued his decision in *Smale v. Cellco P'shp,* 547 F. Supp. 2d 1181 (W.D. Wash. 2008) ("*Smale*"), on April 4, 2008.    Although *Smale* involved claims for breach of contract and consumer fraud based on Verizon's practice of assessing an "Effect of City Tax" separate monthly line item surcharge on its Washington customers, *Smale* is directly pertinent to the state law claims for breach of contract and consumer fraud asserted in Plaintiff's Complaint here – because based on Judge Jones' review of the exact same Customer Agreement and monthly billing statements and other disclosures quoted, *supra,* he concluded, *without qualification,* that the Administrative Charge was supposed to be a recovery of "governmental-surcharge-related costs."

40.    Specifically based on the Customer Agreement, Judge Jones states that the Administrative Charge is "related to [Verizon's] government costs," as follows, 547 F. Supp. 2d at 1185-1186 (footnote omitted):

> The court begins with *the Agreement itself, which discloses three specific categories of Verizon surcharges: Federal Universal Service charges, Regulatory Charges, and Administrative Charges.* Agreement at 3. It does not expressly disclose an Effect of City Tax charge, but instead discloses the possibility of unnamed other charges. *Id.* (stating that charges "may *also* include *other charges* related to our governmental costs") (footnote omitted) (emphasis in original).
>
> * * *
>
> The Agreement *unambiguously states* that Verizon may assess other kinds of charges, with *the restriction that such charges must be "related to [its] governmental costs."* . . . [A]ny reasonable consumer reading the Agreement

would realize that Verizon reserved the right to assess surcharges (however named) that are "related to" its governmental costs. (emphasis added)

41.    Next, reading the "Customer Information Overview" (quoted Footnote 3, *supra*),

Judge Jones unqualifiedly states that the Administrative Charge is supposed to be based on

"governmental-surcharge-related costs, *see* 547 F. Supp. 2d at 1186:

> The "Customer Information Overview" includes a statement that customers' bills *"will include charges to recover or help defray costs of taxes and of governmental surcharges and fees imposed on us."* The overview states that *"[t]he charges include"* the Federal Universal Service Charge, the Regulatory Charge, and the Administrative charge. This disclosure is perhaps more limiting than the Agreement itself, because it does not explicitly state that Verizon reserves the right to impose other charges in addition to the three charges disclosed. Instead, *it states that its governmental-surcharge-related costs will "include" those three categories.* Standing alone, this disclosure is at least arguably unclear as to the possibility of additional charges, because it does not state that such charges "include, but are not limited to," those three categories. But, reading this disclosure in conjunction with the Agreement, which explicitly discloses Verizon's right to assess other governmental-cost-related charges, there is no lack of clarity. (emphasis added)

42.    And, third, Judge Jones states the following regarding Verizon's monthly bill

disclosures, *see* 547 F. Supp. 2d at 1186:

> Finally, Verizon's invoices to customers include a disclosure substantially identical to those in its "Customer Information Overview" and the Agreement, with two important differences. First, the disclosure is beneath the headings "Explanation of Charges" and "Verizon Wireless' Surcharges." These headings are particularly illuminating because the invoice contains a section entitled "Verizon Wireless' Surcharges," in which Verizon assesses the Federal Universal Service Charge, the Regulatory Charge, *the Administrative Charge*, and the Effect of City Tax that has given rise to this litigation. A customer who did not understand the "Effect of City Tax" assessment would naturally seek out the invoice's "Explanation of Charges," and find the section describing Verizon's surcharges. That section would explain that the Effect of City Tax *is a "charge[ ] to recover or help defray costs of taxes and of governmental charges and fees imposed on" Verizon*, and would explain that it is a "Verizon Wireless charge[ ], not [a] tax[ ]." Again, the "Explanation of Charges" does not expressly identify the "Effect of City Tax," but it asserts that the surcharges "may include other charges also related to our governmental costs." (emphasis added)

43.     Wholly aside from Judge Jones' unqualified, repeated findings that the Administrative Charge is supposed to be used for the recovery of government mandated and related costs, *Smale* is remarkable because Judge Jones' findings were based on what Verizon was representing to Judge Jones in its briefs in support of its motion to dismiss in the *Smale* action. Verizon's opening brief in *Smale* (filed less than 3 weeks after its brief in *Litman* quoted *supra),* and its *Smale* reply, never suggest that the Administrative Charge is any different from Verizon's other identified surcharges -- all of which relate to Verizon's government costs. *See Smale,* Docket Entry # 20 (Verizon's December 27, 2008 Motion to Dismiss - Exhibit C hereto), at 4 ("The disclosures in the Customer Agreement explain that Verizon Wireless imposes 'surcharges related to our governmental costs'"); *id.* ("'Verizon Wireless'[s] Surcharges . . . 'include charges to recover or help defray costs of taxes and of governmental surcharges and fees imposed on us, and costs associated with governmental regulations and mandates on our business.'"); *id.* at 19 ("Verizon Wireless's Agreement and Overview explain repeatedly that Verizon Wireless charges its customers surcharges 'related to [its] governmental costs'"). *See also Smale,* Docket Entry # 36 (Verizon's February 15, 2008 Reply in support of Motion to Dismiss – Exhibit D hereto), at 5-6.

44.     That Judge Jones could misunderstand, and be deceived and misled, by the same uniform Customer Agreement and billing and disclosure documents provided to Verizon's customers that are at issue in this action confirms that Verizon's practices regarding the Administrative Charge are deceptive and misleading as a matter of law, as well as a breach of the "unambiguous" Customer Agreement restricting the Administrative Charge to the recovery of government mandated and government related costs, because the Administrative Charge is being

utilized by Verizon to recover general costs and to effectuate a concealed increase in the agreed-upon monthly rate for service.

## CLASS ACTION ALLEGATIONS

45.      Plaintiff brings this action individually and as a class action pursuant to Fed. R. Civ. P. 23(a) and (b) asserting claims on behalf of the following two classes:

(a)      The Rule 23(b)(2) Declaratory Judgment Class, comprised of all Verizon wireless telephone customers, seeking a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, that the application of the FAA to their claims for liability under state law for breach of contract and consumer fraud based on Verizon's practices in connection with its imposition of the Administrative Charge violates Article III of the United States Constitution.

(b)      The Rule 23(b)(3) New York Class, comprised of all Verizon wireless telephone customers whose wireless phones have a New York State area code, seeking damages and other amounts awardable under New York law for breach of contract and consumer fraud based on Verizon's practices in connection with its imposition of the Administrative Charge.[5]

46.      Plaintiff and the Declaratory Judgment Class and the New York Class satisfy the requirements for class certification pursuant to Fed. R. Civ. P. 23(a), and Rules 23(b)(2) and 23(b)(3), respectively.

47.      The members of the Classes are so numerous that joinder of all members is impracticable, as required by Fed. R. Civ. P. 23(a)(1).  Although the precise number of members

---

[5]      The Customer Agreement (Exhibit A, at 7) states that, "this agreement and any disputes covered by it are governed by federal law and the laws of the state encompassing the area code of your wireless phone number when you accepted this agreement, without regard to the conflicts of laws and rules of that state."

of the Classes is unknown to Plaintiff at this time and can be determined only by appropriate discovery, it is reasonably estimated based on the Verizon Communications, Inc. 2011 Form 10-K that the Declaratory Judgment Class members number in excess of 92 million, and that the New York Class members number in excess of 5.7 million.

48.    Common questions of law and fact exist as to all members of the Classes, as required by Rule 23(a)(2), including the following:

(a)    For the Declaratory Judgment Class, whether the application of the FAA to their claims for liability under state law for breach of contract and consumer fraud based on Verizon's practices in connection with its imposition of the Administrative Charge violates Article III of the United States Constitution.

(b)    For the New York Class:

(i)    Whether Verizon has breached the Customer Agreement based on its practices in connection with its imposition of the Administrative Charge;

(ii)    Whether Verizon has violated the New York consumer fraud statute, N.Y. General Business Law ("GBL") § 349, based on Verizon's practices in connection with its imposition of the Administrative Charge; and

(iii)    The appropriate measure of damages and other amounts and relief awardable under New York law.

49.    Plaintiff is a Verizon wireless telephone customer with a New York State area code on whom Verizon has imposed the Administrative Charge, and thus is a member of the Classes he seeks to represent.  Plaintiff's claims are typical of the claims of the members of the Classes, as required under Fed. R. Civ. P. 23(a)(3).  The harm suffered by Plaintiff and all other members of the Classes was and is caused by the same conduct, *viz.,* Verizon's unilateral

demand and involuntary imposition of arbitration enforceable under the FAA in violation of Article III with respect to the Declaratory Judgment Class, and Verizon's wrongful and deceptive practices in connection with its imposition of the Administrative Charge on the New York Class.

50.     Plaintiff will fairly and adequately represent and protect the interests of the Classes as required under Fed. R. Civ. P. 23(a)(4).  Plaintiff has no interests antagonistic to or in conflict with the Classes, and Plaintiff has retained competent counsel, experienced in consumer and commercial class actions and wireless telecommunications law, to further ensure such protection and who intends to prosecute this action vigorously.

51.     The Declaratory Judgment Class satisfies the requirements of Rule 23(b)(2), because Verizon has acted or refused to act on grounds that apply generally to the Class, so that declaratory relief is appropriate respecting the Class as a whole.

52.     The New York Class satisfies the requirements of Rule 23(b)(3), because:

(a)     The common questions under Rule 23(a)(2) predominate over any questions that may affect individual Class members.

(b)     The class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Because the Administrative Charge imposed on the millions of members of the New York Class has never exceeded $1 and the monetary damages suffered by those Class member individually are very small, the expense and burden of individual litigation make it impossible for individual members of the Class to seek redress from the federal courts for Verizon's wrongful conduct in connection with its imposition of the Administrative Charge.  If class treatment of these claims is not available, Verizon will continue its wrongful conduct, and will retain and continue to collect many hundreds of millions of dollars in unlawful Administrative

Charges, and will otherwise escape liability for its wrongdoing in connection with its imposition of the Administrative Charge.

(c)     The New York Class is readily definable, and prosecution of this action as a class action will reduce the possibility of repetitious litigation.  Information concerning the Class members and amount of Administrative Charges Verizon has imposed on them is found in structured data readily available from Verizon's computerized books and records.  Plaintiff knows of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

## FIRST CLAIM FOR RELIEF

### (For a Declaratory Judgment On Behalf of Plaintiff Individually, and the Declaratory Judgment Class)

53.     Plaintiff realleges and reincorporates herein each and every allegation set forth in this Complaint as if set forth verbatim herein.

54.     The application of the FAA to the claims of Plaintiff and the Declaratory Judgment Class for liability under state law for breach of contract and consumer fraud based on Verizon's practices in connection with its imposition of the Administrative Charge violates Article III of the United States Constitution for all of the reasons stated in the Complaint -- including that the FAA fails to satisfy any of the factors considered by the United States Supreme Court in previously upholding Congress' delegation of the Article III judicial power to a non-Article III adjudicator, as most recently codified in *Stern v. Marshall,* 131 S. Ct. 2594 (2011).

55.     The enforceability of the Arbitration Agreement and its provisions is a "gateway" issue to be decided first by the District Court.

56.     As an initial matter, Plaintiff individually is entitled to a judgment, pursuant to 28 U.S.C. §§ 2201-2202, declaring that the application of the FAA to his claims under New York State law for breach of contract and consumer fraud based on Verizon's practices in connection with its imposition of the Administrative Charge violates Article III of the United States Constitution, and thus, that the Arbitration Agreement is not enforceable with respect to Plaintiff's claims and Plaintiff is not required to arbitrate those claims.

57.     After certification of the Declaratory Judgment Class pursuant to Fed. R. Civ. P. 23(a) and (b)(2), then all members of the Declaratory Judgment Class are entitled to a judgment, pursuant to 28 U.S.C. §§ 2201-2202, declaring that the application of the FAA to their state law claims for breach of contract and consumer fraud based on Verizon's practices in connection with its imposition of the Administrative Charge violates Article III of the United States Constitution, and thus, that the Arbitration Agreement is not enforceable with respect to the claims of the members of the Declaratory Judgment Class and the members are not required to arbitrate those claims.

## SECOND CLAIM FOR RELIEF

### (Breach of Contract – On Behalf Plaintiff Individually, and the New York Class)

58.     Plaintiff realleges and reincorporates herein each and every allegation set forth in this Complaint as if set forth verbatim herein.

59.     Verizon's imposition and utilization of the Administrative Charge to recover general costs that are not government mandated or government related, or genuinely administrative, is a concealed increase in the agreed-upon monthly rate for service, and a breach of the terms of the Customer Agreement.

60.     Plaintiff and the New York Class have been injured by Verizon's breach of the Customer Agreement.

61.     Verizon is liable for the damages sustained by Plaintiff and the New York Class in an amount to be determined at trial, but estimated to be at least $300 million.

## THIRD CLAIM FOR RELIEF

### (Violations of GBL § 349 – On Behalf of Plaintiff Individually, and the New York Class)

62.     Plaintiff realleges and reincorporates herein each and every allegation set forth in this Complaint as if set forth verbatim herein.

63.     In determining what types of conduct may be deceptive practices under GBL § 349, the courts of New York have applied an objective standard which asks whether the "representation or omission [is] likely to mislead a reasonable consumer acting reasonably under the circumstances," while taking into account *not only* the impact on the "average consumer" *but also* on "the vast multitude which the statutes were enacted to safeguard . . . including the ignorant, the unthinking and the credulous who, in making purchases, do not stop to analyze but are governed by appearances and general impressions."

64.     Verizon's practices in connection with its imposition of the Administrative Charge on the New York Class constitute deceptive acts or practices in the conduct of business, trade or commerce or in the furnishing of services in this State which affects the public interest under GBL § 349.   Specifically, Verizon's imposition and utilization of the Administrative Charge to recover general costs that are not government mandated or government related, or genuinely administrative, is a concealed increase in the agreed-upon monthly rate for service, and violates GBL § 349.

65.     Plaintiff and the New York Class have been injured by Verizon's conduct.

66.     Plaintiff and the New York Class are entitled in this federal class action to recover the greater of their actual damages or the prescribed $50 statutory damages under GBL § 349, as well as their reasonable attorney's fees.

67.     Additionally, because the facts alleged herein establish that Verizon willfully or knowingly violated GBL § 349, the Court should increase the award of damages to the greater of the prescribed $50 statutory damages or three times the actual damages of each New York Class member up to $1000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of Classes identified herein, prays for relief, and judgment in his and their favor, as follows:

A.     Declaring, as to Plaintiff individually, pursuant to 28 U.S.C. §§ 2201-2202, that the application of the FAA to his claims under New York law for breach of contract and consumer fraud based on Verizon's practices in connection with its imposition of the Administrative Charge violates Article III of the United States Constitution, and thus, that the Arbitration Agreement is not enforceable with respect to Plaintiff and Plaintiff is not required to arbitrate those claims;

B.     Certifying this action as a class action pursuant to Fed. R. Civ. P. 23(a), and Rule 23(b)(2) with respect to the Declaratory Judgment Class and Rule 23(b)(3) with respect to the New York Class, with Plaintiff certified as representative of the Classes;

C.     Declaring, as to the Declaratory Judgment Class, pursuant to 28 U.S.C. §§ 2201-2202, that the application of the FAA to their state law claims for breach of contract and consumer fraud based on Verizon's practices in connection with its imposition of the Administrative Charge violates Article III of the United States Constitution, and thus, that the

Arbitration Agreement is not enforceable with respect to the members of the Declaratory Judgment Class and the members are not required to arbitrate those claims;

      D.     Declaring, as to Plaintiff individually and the New York Class, that Verizon's practices in connection with its imposition of the Administrative Charge breach Verizon's Customer Agreement with Plaintiff and the New York Class, and violate the rights of Plaintiff and the New York Class under GBL § 349;

      E.     Awarding, as to Plaintiff individually and to the New York Class, compensatory and/or actual and/or treble and/or minimum statutory damages, penalties and/or other amounts allowable under New York law, in an amount to be determined at trial;

      F.     Awarding the costs and disbursements incurred in connection with this action, including reasonable attorney's fees and expenses;

      G.     Awarding pre- and post-judgment interest; and

      H.     Granting such other and further relief as the Court deems just and proper.

Dated: White Plains, New York
       December 18, 2012

                          LAW OFFICES OF WILLIAM R. WEINSTEIN

                          By:    /s/ William R. Weinstein
                                William R. Weinstein
                        199 Main Street, 4th Floor
                        White Plains, New York 10601
                        (914) 997-2205
                        wrw@wweinsteinlaw.com

                        ATTORNEY FOR PLAINTIFF
                        AND THE CLASSES

# Exhibit A

## Customer Agreement

Contact A Sales Associate 

**My Verizon Wireless Customer Agreement**

(Para una copia de este documento en espanol, visite nuestro website: vzw.com/espanol.)

**Thanks for choosing Verizon Wireless. In this Customer Agreement, you'll find important information about your Service, including our ability to make changes to your Service or this agreement's terms, our liability if things don't work as planned and how any disputes between us must be resolved in arbitration or small claims court . If you're signing up for Service for a minimum contract term, you'll also find information about that contract term and what happens if you cancel a line of Service early or don't pay on time, including the possibility of an Early Termination Fee you may owe Verizon Wireless.**

### My Service

**Your Service terms and conditions are part of this agreement.** Your Plan includes your monthly allowances and features, where you can use them (your "Coverage Area"), and their monthly pay–per–use charges. You can also subscribe to several Optional Services, like text messaging packages. Together, your Plan and any Optional Services you select are your Service. The terms and conditions for your Service can be found in the brochures that are available when you activate, or online at verizonwireless.com

### How Do I Accept This Agreement?

You accept this agreement by:

    Agreeing in writing, by email, over the phone, or in person;

    Opening a package that says you are accepting by opening it; or

    Activating your Service.

When you accept, you're representing that you are at least 18 years old and are legally able to accept an agreement. If you're accepting for an organization, you're representing that you are authorized to bind that organization, and where the context requires, "you" means the organization. By accepting you are agreeing to every provision of this Agreement whether or not you have to read it.

**If you do accept, you can cancel a line of Service within 14 days of accepting this Agreement without having to pay an Early Termination Fee as long as you return, within the applicable return period, any equipment you purchased from us or one of our authorized agents at a discount in connection with your acceptance of this Agreement, but you'll still have to pay for your Service through that date. If you signed up for Prepaid Service, no refunds will be granted after 14 days or if your account has been activated. Your activation fee will not be refunded unless you cancel within three days of accepting.**

If you change your device or receive a Service promotion, you may be required to change your Plan to one that we are currently offering at that time.

### My Privacy

We collect personal information about you. We gather some information through our relationship with you, such as information about the quantity, technical configuration, type, destination and amount of your use of our telecommunications services. You can find out how we use, share and protect the information we collect about you in the Verizon Privacy Policy, available at verizon.com/privacy. By entering this Agreement, you consent to our data collection, use and sharing practices described in our Privacy Policy. We provide you with choices to limit, in certain circumstances, our use of the data we have about you. You can review these choices at verizon.com/privacy/#limits. If there are additional specific advertising and marketing practices for which your consent is necessary, we will seek your consent (such as through the privacy–related notices you receive when you purchase or use products and services) before engaging in those practices. If you subscribe to Service for which usage charges are billed at the end of the billing period ("Postpay Service"), we may investigate your credit history at any time and share credit information about you with credit reporting agencies and other Verizon companies. If you'd like the name and address of any credit agency that gives us a credit report about you, just ask.

Many services and applications offered through your device may be provided by third parties. Some of

these services and applications, which you may block or restrict at no cost, may involve charges for which you will be billed. The amount and frequency of the charges will be disclosed when you agree to the charges. Before you use, link to or download a service or application provided by a third party, you should review the terms of such service or application and applicable privacy policy. Personal information you submit may be read, collected or used by the service or application provider and/or other users of those forums. Verizon Wireless is not responsible for any third–party information, content, applications or services you access, download or use on your device. You are responsible for maintaining virus and other Internet security protections when accessing these third–party products or services. For additional information, visit the Verizon Content Policy at **http://responsibility.verizon.com/contentpolicy**

You consent to allow Verizon Wireless and anyone who collects on our behalf to contact you about your account status, including past due or current charges, using prerecorded calls, email and calls or messages delivered by an automatic telephone dialing system to any wireless phone number or email address you provide. Verizon Wireless will treat any email address you provide as your private email that is not accessible by unauthorized third parties. Unless you notify us that your wireless service is based in a different time zone, calls will be made to your cellular device during permitted calling hours based upon the time zone affiliated with the mobile telephone number you provide.

### What Happens if My Postpay Service Is Canceled Before the End of My Contract Term?

If you're signing up for Postpay Service, you're agreeing to subscribe to a line of Service either on a month–to–month basis or for a minimum contract term, as shown on your receipt or order confirmation. (If your Service is suspended without billing, that time doesn't count toward completing your contract term.) Once you've completed your contract term, you'll automatically become a customer on a month–to–month basis for that line of Service. **If you cancel a line of Service, or if we cancel it for good cause, during its contract term, you'll have to pay an Early Termination Fee. If your contract term results from your purchase of an Advanced Device, your Early Termination Fee will be $350 minus $10 for each full month of your contract term that you complete. (For a complete list of Advanced Devices, check verizonwireless.com/advanceddevices.) Otherwise, your Early Termination Fee will be $175 minus $5 for each full month of your contract term that you complete. Cancellations will become effective on the last day of that month's billing cycle,** and you are responsible for all charges incurred until then. Also, if you bought your wireless device from an authorized agent or third–party vendor, you should check whether they charge a separate termination fee.

### Can I Take My Wireless Phone Number to Another Carrier?

You may be able to take, or "port", your wireless phone number to another carrier. If you port a number from us, we'll treat it as though you asked us to cancel your Service for that number. After the porting is completed, you won't be able to use our service for that number, but you'll remain responsible for all fees and charges through the end of that billing cycle, just like any other cancellation. If you're a Prepaid customer, you won't be entitled to a refund of any balance on your account. If you port a number to us, please be aware that we may not be able to provide some services right away, such as 911 location services. You don't have any rights to your wireless phone number, except for any right you may have to port it.

### Directory Information

We will not publish your wireless phone number in any available directory or give it to anyone for that purpose, unless you ask us to.

### Can I Have Someone Else Manage My Postpay Account?

No problem – just tell us by phone, in person, or in writing. You can appoint someone to manage your Postpay account for a single transaction, or until you tell us otherwise. The person you appoint will be able to make changes to your account, including adding new lines of Service, buying new wireless devices, and extending your contract term. Any changes that person makes will be treated as modifications to this agreement.

### Can Verizon Wireless Change This Agreement or My Service?

We may change prices or any other term of your Service or this agreement at any time, but we'll provide notice first, including written notice if you have Postpay Service. If you use your Service after the change takes effect, that means you're accepting the change. If you're a Postpay customer and a change to your Plan or this agreement has a material adverse effect on you, you can cancel the line of Service that has been affected within 60 days of receiving the notice with no Early Termination Fee if we fail to negate the change after you notify us of your objection to it.

### My Wireless Device

Your wireless device must comply with Federal Communications Commission regulations, be certified for use on our network, and be compatible with your Service. Please be aware that we may change your wireless device's software, applications or programming remotely, without notice. This could affect your stored data, or how you've programmed or use your wireless device. By activating Service that uses a SIM (Subscriber Identity Module) card, you agree we own the intellectual property and software in the SIM card, that we may change the software or other data in the SIM card remotely and without notice, and we may utilize any capacity in the SIM card for administrative, network, business and/or commercial purposes. If you bought a wireless device for Postpay Service from Verizon Wireless that doesn't use a SIM card, and you want to reprogram it for use with another wireless network, the default programming code is set to "000000" or "123456." But please note that your wireless device may not work with another wireless network, or the other wireless carrier may not accept your wireless device on its network. If you activate a wireless device for Prepaid Service, during the first six (6) months after activation, it can only be used for Prepaid Service. The iPhone 4 is configured to work only with the wireless services of Verizon Wireless and may not work on another carrier's network, even after completion of your contract term.

### Where and How Does Verizon Wireless Service Work?

Wireless devices use radio transmissions, so unfortunately you can't get Service if your device isn't in range of a transmission signal. And please be aware that even within your Coverage Area, many things can affect the availability and quality of your Service, including network capacity, your device, terrain, buildings, foliage and weather.

### What Charges Are Set by Verizon Wireless?

You agree to pay all access, usage and other charges that you or the user of your wireless device incurred. For Postpay Service, our charges also include Federal Universal Service, Regulatory and Administrative Charges, and we may also include other charges related to our governmental costs. We set these charges; they aren't taxes, they aren't required by law, they are not necessarily related to anything the government does, they are kept by us in whole or in part, and the amounts and what they pay for may change.

### Government Taxes, Fees and Surcharges

You must pay all taxes, fees and surcharges set by federal, state and local governments. Please note that we may not always be able to notify you in advance of changes to these charges.

### What Are Roaming Charges?

You're "roaming" whenever your wireless device uses a transmission site outside your Coverage Area or uses another company's transmission site. Sometimes roaming happens even when you're within your Coverage Area. There may be higher rates and extra charges (including charges for long distance, tolls or calls that don't connect) for roaming calls, depending on your Plan.

### How Does Verizon Wireless Calculate My Charges?

For charges based on the amount of time used or data sent or received, we'll round up any fraction to the next full minute or, depending on how you're billed for data usage, the next full megabyte or gigabyte. For outgoing calls, usage time starts when you first press **SEND** or the call connects to a network, and for incoming calls, it starts when the call connects to a network (which may be before it rings). Usage time may end several seconds after you press **END** or after the call disconnects. For calls made on our network, we charge only for calls that are answered, including by machines. For Postpay Service, usage cannot always be processed right away and may be included in a later bill, but the usage will still count towards your allowance for the month when the Service was used.

### How and When Can I Dispute Charges?

If you're a Postpay customer, you can dispute your bill within 180 days of receiving it, but unless otherwise provided by law or unless you're disputing charges because your wireless device was lost or stolen, you still have to pay all charges until the dispute is resolved. If you're a Prepaid customer, you can dispute a charge within 180 days of the date the disputed charge was incurred. **YOU MAY CALL US TO DISPUTE CHARGES ON YOUR BILL OR ANY SERVICE(S) FOR WHICH YOU WERE BILLED, BUT IF YOU WISH TO PRESERVE YOUR RIGHT TO BRING AN ARBITRATION OR SMALL CLAIMS CASE REGARDING SUCH DISPUTE, YOU MUST WRITE TO US AT THE CUSTOMER SERVICE ADDRESS ON YOUR BILL, SEND AN EMAIL THROUGH THE "CONTACT US" LINK ON VERIZONWIRELESS.COM, OR SEND US A COMPLETED NOTICE OF DISPUTE FORM (AVAILABLE AT VERIZONWIRELESS.COM), WITHIN THE 180–DAY PERIOD MENTIONED ABOVE. IF YOU DO NOT NOTIFY US IN WRITING OF SUCH DISPUTE WITHIN THE 180-DAY PERIOD, YOU WILL HAVE**

WAIVED YOUR RIGHT TO DISPUTE THE BILL OR SUCH SERVICE(S) AND TO BRING AN
ARBITRATION OR SMALL CLAIMS CASE REGARDING ANY SUCH DISPUTE.

**What Are My Rights for Dropped Calls or Interrupted Service?**

If you drop a call in your Coverage Area, redial. If it's answered within 5 minutes, call us within 90 days if
you're a Postpay customer, or within 45 days if you're a Prepaid customer, and we'll give you a 1–minute
airtime credit. If you're a Postpay customer and you lose Service in your Coverage Area for more than 24
hours in a row and we're at fault, call us within 180 days and we'll give you a credit for the time lost.
Please be aware that these are your only rights for dropped calls or interrupted Service.

**About My Payments**

If you're a Postpay customer and we don't get your payment on time, we will charge you a late fee of up to
1.5 percent per month (18 percent per year) on the unpaid balance, or a flat $5 per month, whichever is
greater, if allowed by law in the state of your billing address. (If you choose another company to bill you
for our Service [such as another Verizon company], late fees are set by that company or by its tariffs and
may be higher than our late fees.) Late fees are part of the rates and charges you agree to pay us. If you
fail to pay on time and Verizon Wireless refers your account(s) to a third party for collection, Verizon
Wireless will charge a collection fee at the maximum percentage permitted by applicable law, but not to
exceed 18 percent, to cover collection–related costs. We may require a deposit at the time of activation or
afterward, or an increased deposit. We'll pay simple interest on any deposit at the rate the law requires.
We may apply deposits or payments in any order to any amounts you owe us on any account. If your final
credit balance is less than $1, we will refund it only if you ask. You may have to pay a $35 fee to
re–activate Service if your Service is terminated , or a $15 fee to reconnect Service if it is interrupted for
non–payment or suspended for any reason.

If you're a Prepaid customer, you may replenish your balance at any time before the expiration date by
providing us with another payment. Your balance may not exceed $1,000 and you may be prevented from
replenishing if your balance reaches $1,000. We will suspend service when your account reaches the
expiration date and any unused balance will be forfeited.

We may charge you up to $25 for any returned check.

**What if My Wireless Device Gets Lost or Stolen?**

We're here to help. It's important that you notify us right away, so we can suspend your Service to keep
someone else from using it. If you're a Postpay customer and your wireless device is used after the loss
or theft but before you report it, and you want a credit for any charges for that usage, we're happy to
review your account activity and any other information you'd like us to consider. Keep in mind that you
may be held responsible for the charges if you delayed reporting the loss or theft without good reason,
but you don't have to pay any charges you dispute while they are being investigated. If we haven't given
you a courtesy suspension of recurring monthly charges during the past year, we'll give you one for 30
days or until you replace or recover your wireless device, whichever comes first.

**What Are Verizon Wireless' Rights to Limit or End Service or End this Agreement?**

We can, without notice, limit, suspend or end your Service or any agreement with you for any good cause,
including, but not limited to: (1) if you: (a) breach this agreement; (b) resell your Service; (c) use your
Service for any illegal purpose, including use that violates trade and economic sanctions and prohibitions
promulgated by any U.S. governmental agency; (d) install, deploy or use any regeneration equipment or
similar mechanism (for example, a repeater) to originate, amplify, enhance, retransmit or regenerate an
RF signal without our permission; (e) steal from or lie to us; or, if you're a Postpay customer, (f) do not pay
your bill on time; (g) incur charges larger than a required deposit or billing limit, or materially in excess of
your monthly access charges (even if we haven't yet billed the charges); (h) provide credit information we
can't verify; or (i) are unable to pay us or go bankrupt; or (2) if you, any user of your device or any line of
service on your account, or any account manager on your account: (a) threaten, harass, or use vulgar
and/or inappropriate language toward our representatives; (b) interfere with our operations; (c) "spam," or
engage in other abusive messaging or calling; (d) modify your device from its manufacturer's
specifications; or (e) use your Service in a way that negatively affects our network or other customers. We
can also temporarily limit your Service for any operational or governmental reason.

**Am I Eligible for Special Discounts?**

If you're a Postpay customer, you may be eligible for a discount if you are and remain affiliated with an
organization that has an agreement with us. Unless your discount is through a government employee
discount program, we may share certain information about your Service (including your name, your

wireless telephone number and your total monthly charges) with your organization from time to time to make sure you're still eligible. We may adjust or remove your discount according to your organization's agreement with us, and remove your discount if your eligibility ends or your contract term expires. In any case, this won't be considered to have a material adverse effect on you.

### Disclaimer of Warranties

**We make no representations or warranties, express or implied, including, to the extent permitted by applicable law, any implied warranty of merchantability or fitness for a particular purpose, about your Service, your wireless device, or any applications you access through your wireless device. We do not warrant that your wireless device will work perfectly or will not need occasional upgrades or modifications, or that it will not be negatively affected by network–related modifications, upgrades or similar activity. If you download or use applications, services or software provided by third parties (including voice applications), 911 or E911, or other calling functionality, may work differently than services offered by us, or may not work at all. Please review all terms and conditions of such third–party products.**

**Please be aware that if you activated your wireless device through our Open Development program, we can't vouch for the device's call quality or overall functionality.**

### Waivers and Limitations of Liability

**You and Verizon Wireless both agree to limit claims against each other for damages or other monetary relief to direct damages. This limitation and waiver will apply regardless of the theory of liability. That means neither of us will try to get any indirect, special, consequential, treble or punitive damages from the other. This limitation and waiver also applies if you bring a claim against one of our suppliers, to the extent we would be required to indemnify the supplier for the claim.** You agree we aren't responsible for problems caused by you or others, or by any act of God. You also agree we aren't liable for missed or deleted voice mails or other messages, or for any information (like pictures) that gets lost or deleted if we work on your device. If another wireless carrier is involved in any problem (for example, while you're roaming), you also agree to any limitations of liability that it imposes.

---

**How Do I Resolve Disputes with Verizon Wireless?**

WE HOPE TO MAKE YOU A HAPPY CUSTOMER, BUT IF THERE'S AN ISSUE THAT NEEDS TO BE RESOLVED, THIS SECTION OUTLINES WHAT'S EXPECTED OF BOTH OF US.

YOU AND VERIZON WIRELESS BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT. THERE'S NO JUDGE OR JURY IN ARBITRATION, AND THE PROCEDURES MAY BE DIFFERENT, BUT AN ARBITRATOR CAN AWARD YOU THE SAME DAMAGES AND RELIEF, AND MUST HONOR THE SAME TERMS IN THIS AGREEMENT, AS A COURT WOULD. IF THE LAW ALLOWS FOR AN AWARD OF ATTORNEYS' FEES, AN ARBITRATOR CAN AWARD THEM TOO. WE ALSO BOTH AGREE THAT:

(1) THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT. EXCEPT FOR SMALL CLAIMS COURT CASES THAT QUALIFY, ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US (OR FROM ANY ADVERTISING FOR ANY SUCH PRODUCTS OR SERVICES) WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR BETTER BUSINESS BUREAU ("BBB"). YOU CAN ALSO BRING ANY ISSUES YOU MAY HAVE TO THE ATTENTION OF FEDERAL, STATE, OR LOCAL GOVERNMENT AGENCIES, AND IF THE LAW ALLOWS, THEY CAN SEEK RELIEF AGAINST US FOR YOU.

(2) UNLESS YOU AND VERIZON WIRELESS AGREE OTHERWISE, THE ARBITRATION WILL TAKE PLACE IN THE COUNTY OF YOUR BILLING ADDRESS. FOR CLAIMS OVER $10,000, THE AAA'S WIRELESS INDUSTRY ARBITRATION ("WIA") RULES WILL APPLY, IN SUCH CASES, THE LOSER CAN ASK FOR A PANEL OF THREE NEW ARBITRATORS TO REVIEW THE AWARD. FOR CLAIMS OF $10,000 OR LESS, THE PARTY BRINGING THE CLAIM CAN CHOOSE EITHER THE AAA'S WIA RULES OR THE BBB'S RULES FOR BINDING ARBITRATION OR, ALTERNATIVELY, CAN BRING AN INDIVIDUAL ACTION IN SMALL CLAIMS COURT. YOU CAN GET PROCEDURES, RULES AND FEE INFORMATION FROM THE AAA (WWW.ADR.ORG), THE BBB (WWW.BBB.ORG) OR FROM US. FOR CLAIMS OF $10,000 OR LESS, YOU CAN CHOOSE WHETHER YOU'D LIKE THE ARBITRATION CARRIED OUT BASED ONLY ON DOCUMENTS SUBMITTED TO THE ARBITRATOR, OR BY A HEARING IN–PERSON OR BY PHONE.

---

**(3) THIS AGREEMENT DOESN'T ALLOW CLASS OR COLLECTIVE ARBITRATIONS EVEN IF THE AAA OR BBB PROCEDURES OR RULES WOULD. NOT WITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT, THE ARBITRATOR MAY AWARD MONEY OR INJUNCTIVE RELIEF ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO PROVIDE RELIEF WARRANTED BY THAT PARTY'S INDIVIDUAL CLAIM. NO CLASS OR REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL THEORIES OF LIABILITY OR PRAYERS FOR RELIEF MAY BE MAINTAINED IN ANY ARBITRATION HELD UNDER THIS AGREEMENT.**

(4) IF EITHER OF US INTENDS TO SEEK ARBITRATION UNDER THIS AGREEMENT, THE PARTY SEEKING ARBITRATION MUST FIRST NOTIFY THE OTHER PARTY OF THE DISPUTE IN WRITING AT LEAST 30 DAYS IN ADVANCE OF INITIATING THE ARBITRATION. NOTICE TO VERIZON WIRELESS SHOULD BE SENT TO VERIZON WIRELESS DISPUTE RESOLUTION MANAGER, ONE VERIZON WAY, VC52N061, BASKING RIDGE, NJ 07920. THE NOTICE MUST DESCRIBE THE NATURE OF THE CLAIM AND THE RELIEF BEING SOUGHT. IF WE ARE UNABLE TO RESOLVE OUR DISPUTE WITHIN 30 DAYS, EITHER PARTY MAY THEN PROCEED TO FILE A CLAIM FOR ARBITRATION. WE'LL PAY ANY FILING FEE THAT THE AAA OR BBB CHARGES YOU FOR ARBITRATION OF THE DISPUTE. IF YOU PROVIDE US WITH SIGNED WRITTEN NOTICE THAT YOU CANNOT PAY THE FILING FEE, VERIZON WIRELESS WILL PAY THE FEE DIRECTLY TO THE AAA OR BBB. IF THAT ARBITRATION PROCEEDS, WE'LL ALSO PAY ANY ADMINISTRATIVE AND ARBITRATOR FEES CHARGED LATER, AS WELL AS FOR ANY APPEAL TO A PANEL OF THREE NEW ARBITRATORS (IF THE ARBITRATION AWARD IS APPEALABLE UNDER THIS AGREEMENT).

(5) WE ALSO OFFER CUSTOMERS THE OPTION OF PARTICIPATING IN A FREE INTERNAL MEDIATION PROGRAM. THIS PROGRAM IS ENTIRELY VOLUNTARY AND DOES NOT AFFECT EITHER PARTY'S RIGHTS IN ANY OTHER ASPECT OF THESE DISPUTE RESOLUTION PROCEDURES. IN OUR VOLUNTARY MEDIATION PROGRAM, WE WILL ASSIGN AN EMPLOYEE WHO'S NOT DIRECTLY INVOLVED IN THE DISPUTE TO HELP BOTH SIDES REACH AN AGREEMENT. THAT PERSON HAS ALL THE RIGHTS AND PROTECTIONS OF A MEDIATOR AND THE PROCESS HAS ALL OF THE PROTECTIONS ASSOCIATED WITH MEDIATION. FOR EXAMPLE, NOTHING SAID IN THE MEDIATION CAN BE USED LATER IN AN ARBITRATION OR LAWSUIT. IF YOU'D LIKE TO KNOW MORE, PLEASE CONTACT US AT **VERIZONWIRELESS.COM** OR THROUGH CUSTOMER SERVICE. IF YOU'D LIKE TO START THE MEDIATION PROCESS, PLEASE GO TO **VERIZONWIRELESS.COM** OR CALL CUSTOMER SERVICE FOR A NOTICE OF DISPUTE FORM TO FILL OUT, AND MAIL, FAX OR EMAIL IT TO US ACCORDING TO THE DIRECTIONS ON THE FORM.

(6) WE MAY, BUT ARE NOT OBLIGATED TO, MAKE A WRITTEN SETTLEMENT OFFER ANYTIME BEFORE ARBITRATION BEGINS. THE AMOUNT OR TERMS OF ANY SETTLEMENT OFFER MAY NOT BE DISCLOSED TO THE ARBITRATOR UNTIL AFTER THE ARBITRATOR ISSUES AN AWARD ON THE CLAIM. IF YOU DON'T ACCEPT THE OFFER AND THE ARBITRATOR AWARDS YOU AN AMOUNT OF MONEY THAT'S MORE THAN OUR OFFER BUT LESS THAN $5000, OR IF WE DON'T MAKE YOU AN OFFER, AND THE ARBITRATOR AWARDS YOU ANY AMOUNT OF MONEY BUT LESS THAN $5000, THEN WE AGREE TO PAY YOU $5000 INSTEAD OF THE AMOUNT AWARDED. IN THAT CASE WE ALSO AGREE TO PAY ANY REASONABLE ATTORNEYS' FEES AND EXPENSES, REGARDLESS OF WHETHER THE LAW REQUIRES IT FOR YOUR CASE. IF THE ARBITRATOR AWARDS YOU MORE THAN $5000, THEN WE WILL PAY YOU THAT AMOUNT.

(7) AN ARBITRATION AWARD AND ANY JUDGMENT CONFIRMING IT APPLY ONLY TO THAT SPECIFIC CASE; IT CAN'T BE USED IN ANY OTHER CASE EXCEPT TO ENFORCE THE AWARD ITSELF.

**(8) IF FOR SOME REASON THE PROHIBITION ON CLASS ARBITRATIONS SET FORTH IN SUBSECTION (3) CANNOT BE ENFORCED, THEN THE AGREEMENT TO ARBITRATE WILL NOT APPLY.**

**(9) IF FOR ANY REASON A CLAIM PROCEEDS IN COURT RATHER THAN THROUGH ARBITRATION, YOU AND VERIZON WIRELESS AGREE THAT THERE WILL NOT BE A JURY TRIAL. YOU AND VERIZON WIRELESS UNCONDITIONALLY WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT IN ANY WAY. IN THE EVENT OF LITIGATION, THIS PARAGRAPH MAY BE FILED TO SHOW A WRITTEN CONSENT TO A TRIAL BY THE COURT.**

**About this Agreement**

If we don't enforce our rights under this agreement in one instance, that doesn't mean we won't or can't enforce those rights in any other instance. You cannot assign this agreement or any of your rights or duties under it without our permission. However, we may assign this agreement or any debt you owe us without notifying you. **If you're a Postpay customer, please note that many notices we send to you will show up as messages on your monthly bill. If you have online billing, those notices will be deemed received by you when your online bill is available for viewing. If you get a paper bill, those notices will be deemed received by you three days after we mail the bill to you. If we send other notices to you, they will be considered received immediately if we send them to your wireless device, or to any email or fax number you've given us, or after three days if we mail them to your billing address. If you need to send notices to us, please send them to the customer service address on your latest bill.**

**If you're a Prepaid customer and we send notices to you, they will be considered received immediately if we send them to your wireless device or to any email or fax number you've given us, or if we post them as a pre–call notification on your Service, or after three days if we mail them to the most current address we have for you. If you need to send notices to us, please send them to the Customer Service Prepaid address at verizonwireless.com/contactus**

**If any part of this agreement, including anything regarding the arbitration process (except for the prohibition on class arbitrations as explained in part 8 of the dispute resolution section above), is ruled invalid, that part may be removed from this agreement.**

**This agreement and the documents it incorporates form the entire agreement between us. You can't rely on any other documents, or on what's said by any sales or customer service representatives, and you have no other rights regarding Service or this agreement.** This agreement isn't for the benefit of any third party except our parent companies, affiliates, subsidiaries, agents, and predecessors and successors in interest. Except where we've agreed otherwise elsewhere in this agreement, this agreement and any disputes covered by it are governed by federal law and the laws of the state encompassing the area code of your wireless phone number when you accepted this agreement, without regard to the conflicts of laws and rules of that state.

**Additional Disclosures**

We are implementing optimization and transcoding technologies in our network to transmit data files in a more efficient manner to allow available network capacity to benefit the greatest number of users. These techniques include caching less data, using less capacity, and sizing the video more appropriately for the device. The optimization process is agnostic to the content itself and to the website that provides it. While we invest much effort to avoid changing text, image, and video files in the compression process and while any change to the file is likely to be indiscernible, the optimization process may minimally impact the appearance of the file as displayed on your device. For a further, more detailed explanation of these techniques, please visit www.verizonwireless.com/vzwoptimization

Verizon Wireless strives to provide customers the best experience when using our network, a shared resource among tens of millions of customers. To help achieve this, if you use an extraordinary amount of data and fall within the top 5% of Verizon Wireless data users we may reduce your data throughput speeds periodically for the remainder of your then current and immediately following billing cycle to ensure high quality network performance for other users at locations and times of peak demand. Our proactive management of the Verizon Wireless network is designed to ensure that the remaining 95% of data customers aren't negatively affected by the inordinate data consumption of just a few users.

Last Updated: 11/29/12

# Exhibit B

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| KEITH LITMAN and ROBERT WACHTEL, individually and on behalf of all others similarly situated, | Civil Action No. 07-4886 (FLW) (JJH) |
| Plaintiffs, | Hon. Freda L. Wolfson |
| v. | |
| CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, | |
| Defendant. | Return Date: February 4, 2008 |
| | Oral Argument Requested |

## BRIEF IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

Philip R. Sellinger (PS 9369)
Todd L. Schleifstein (TS 3787)
GREENBERG TRAURIG, LLP
200 Park Avenue
Florham Park, New Jersey 07932
Tel. 973.360.7900
Fax. 973.301.8410

Andrew G. McBride, Esq.
William S. Consovoy, Esq.
WILEY REIN LLP
1776 K Street NW
Washington, DC 20006
Tel. 202.719.7000
Fax. 202.719.7049

Attorneys for Defendant
Cellco Partnership d/b/a Verizon Wireless

2.   Plaintiffs' Challenge to Verizon's "Vague Disclosures" Fails to Meet the Heightened Pleading Standard of Rule 9(b) and Is Otherwise Preempted Under Section 332 of the Communications Act.

Plaintiffs also contend that Verizon violated the NJCFA by setting forth "vague" disclosures that "misleadingly and deceptively" led Plaintiffs to believe the Administrative Charge "bears any legitimacy." Compl. ¶ 34(iii). Plaintiffs appear to be challenging the disclosure in Verizon's "Notice of Introduction of Administrative Charge." Compl. ¶¶ 21(b), 22, 34(iii). Here too, Plaintiffs have failed to set forth any factual allegations that, if true, would establish that the Notice had the "capacity to mislead the average consumer." *Adamson*, 463 F. Supp. 2d at 501. Labeling a statement "vague" or "misleading" is patently insufficient to plead a cause of action under the NJCFA. *See, e.g., Frederico v. Home Depot*, -- F.3d --, 2007 WL 3310553, at *12 (3d Cir. 2007) (dismissing complaint that merely asserted that Home Depot "violated the [NJ]CFA by its use of false and misleading representations in connection with the terms, conditions, and 'late' fees associated with the return of rental vehicles").

In fact, Plaintiffs' own allegations demonstrate that the Notice was clear, understandable, and completely accurate. As alleged, the Notice stated that the charge "will help defray certain costs" to Verizon, including "fees and assessments on network facilities and services" and the costs of building new cell sites. Compl. ¶ 21(b). In other words, Verizon disclosed that it was recovering general costs it

28

incurred to provide service.  Although Plaintiffs claim the Notice was misleading,
they admit they understood the charge to be a "pass-through" of general costs to
Verizon.  *Id.* ¶¶ 22, 34(iii).  Given the disclosures Plaintiffs themselves cite, no
reasonable consumer could have believed that the Administrative Charge was a
government mandated tax or fee.  The Complaint itself quite literally defeats any
NJCFA claim.  *See, e.g., Carroll v. Xerox Corp.*, 294 F.3d 231, 242 (1st Cir. 2002)
(dismissing claim where "complaint itself contain[ed] allegations which flatly
contradict[ed] [plaintiff's] characterizations").

Furthermore, Plaintiffs failed to allege that they suffered ascertainable loss
*as a result of* the purportedly "vague disclosures" in Verizon's Notice.  Plaintiffs
do *not* allege that, but for the purportedly "vague disclosures," they would have
sought to cancel their service, disputed the Administrative Charge, or ultimately
declined to renew the contract for any one of their several lines.  Even before
*Twombly*, courts declined to credit bald assertions of entitlement to relief.  In
*Twombly*'s wake, Plaintiffs must do more to explain how the alleged "vague
disclosures" caused them ascertainable loss.  *See, e.g., Frederico v. Home Depot*,
No. 05-5579, 2006 WL 624901, at *6 (D.N.J. Mar. 10, 2006), *aff'd*, --F.3d--, 2007
WL 3310553 (3d Cir. 2007) ("Plaintiff fails to sufficiently allege that Defendant's
conduct *caused* her ascertainable loss.  Without knowing when Plaintiff attempted
to return the truck to Home Depot, it is impossible to determine whether it was

# Exhibit C

The Honorable Richard A. Jones

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

BRIAN SMALE, individually and on behalf of
all the members of the class of persons similarly
situated; DAN JUNT, individually and on behalf
of all the members of the class of persons
similarly situated; JULIE COOPER, individually
and on behalf of all the members of the class of
persons similarly situated;

                    Plaintiffs,

        v.

CELLCO PARTNERSHIP, d/b/a VERIZON
WIRELESS, a Delaware partnership, OLYMPIA
CELLULAR LIMITED PARTNERSHIP, a
Delaware partnership, GRAYS HARBOR-
MASON LIMITED PARTNERSHIP, a
Delaware partnership, SPOKANE MSA
LIMITED PARTNERSHIP, a Delaware
partnership, SEATTLE SMSA LIMITED
PARTNERSHIP, a Delaware partnership,
IDAHO RSA #1, LIMITED, a Delaware
partnership,

                    Defendants.

No. C07-1639 (RAJ)

CLASS ACTION

DEFENDANTS' MOTION TO
DISMISS PLAINTIFFS'
AMENDED COMPLAINT
PURSUANT TO RULE 12(b)(6)

**Noted on Motion Calendar:
February 15, 2008**

*Oral Argument Requested*

22

23

24

25

26

27

DEFENDANTS' MOTION TO DISMISS (C07-1639 RAJ)
DWT 2132126v7 0052051-010826

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1  *Id.* Ex. K, at 1-2 (emphasis added).  Thus, as the WUTC explains (and has explained for 10

2  years), various Washington cities charge Verizon Wireless a utility tax, which is then surcharged

3  to the consumer.  Because these taxes are imposed on Verizon Wireless, the charge that is passed

4  on to the consumer is not a tax on the consumer, but is instead an amount that reflects the "effect

5  of" the tax on Verizon Wireless.  In the words of the WUTC, "[t]his is why the bill shows the

6  charge as the 'effect' of city tax rather than, simply, city tax."  *Id.*

   2.   **Verizon Wireless Explains its Surcharges in the Customer Agreement,**
        **Customer Information Overview, and in Customer Bills.**

8  Plaintiffs allege that neither Verizon Wireless's Customer Agreement nor its Customer

9  Information Overview disclose the "effect-of-city-tax" surcharge.  Am. Compl. ¶¶ 3.1-3.2.

10  Plaintiffs further allege that the line item for the effect-of-city-tax surcharge is "not

11  conspicuously displayed" on customer's bills *Id.* ¶¶ 2.6, 2.16, 2.26.  In fact, those documents on

12  their face refute plaintiffs' claims.

13  The disclosures in the Customer Agreement explain that Verizon Wireless imposes

14  surcharges "related to our governmental costs," that Verizon Wireless "set[s] these charges" and

15  that the charges "aren't taxes, aren't required by law, and are kept by us in whole or in part, and

16  the amounts and what's included are subject to change."  Murrieta Dec. Ex. A, at 3.

17  The Verizon Wireless Customer Information Overview (the "Overview") — which is

18  included with the Customer Agreement, and which plaintiffs concede is provided to consumers

19  when they contract with Verizon Wireless, *see* Am. Compl. ¶ 3.1 — contains a section devoted

20  to "Verizon Wireless'[s] Surcharges."  Murrieta Dec. Ex. D, at 2.  The Overview further explains

21  that the customers' bills "will include charges to recover or help defray costs of taxes and of

22  governmental surcharges and fees imposed on us, and costs associated with governmental

23  regulations and mandates on our business."  *Id.*  The Overview also explains that the surcharges

24  "are Verizon Wireless charges, not taxes, and are subject to change."  *Id.*

25  Finally, Verizon Wireless's monthly bills prominently display, and further elaborate on,

26  the effect-of-city-tax surcharge.  *See* Murrieta Dec. Exs. G-I, at 2, 3 (plaintiffs' bills); Am.

27

DEFENDANTS' MOTION TO DISMISS (C07-1639 RAJ) — 4
DWT 2132126v7 0052051-010826

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1    Nowhere in Plaintiffs' Amended Complaint do they specify what contract provision

2    Verizon Wireless breached.  Instead, their contract claim appears to be based on a claim that

3    Verizon Wireless promised to charge only those fees that it disclosed.  Am. Compl. ¶¶ 3.6-3.7.

4    But the pleadings and incorporated documents show that Verizon Wireless breached no such

5    promise.  Indeed, as shown above, Verizon Wireless's Agreement and Overview explain

6    repeatedly that Verizon Wireless charges its customers surcharges "related to [its] governmental

7    costs," that Verizon Wireless "set[s] these charges" that the charges "aren't taxes, aren't required

8    by law, and are kept by [Verizon Wireless] in whole or in part," that bills "will include charges

9    to recover or help defray costs of taxes and of governmental surcharges and fees imposed on

10   [Verizon Wireless], and costs associated with governmental regulations and mandates on

11   [Verizon Wireless's] business."  *Id.* Murrieta Dec. Exs. A & D.   Because Verizon Wireless

12   disclosed that it would bill and collect surcharges to recoup the costs of paying governmental

13   taxes imposed on Verizon Wireless (like the effect-of-city-tax surcharge), the court should

14   dismiss plaintiffs' breach of contract claim, as there are no allegations plausibly showing that

15   Verizon Wireless breached any contract term with plaintiffs.

16          **3.    Plaintiffs' Equitable Unjust Enrichment Claim Should Be Dismissed
                    Because A Contract Governs Their Claims**

17          To establish their equitable claim of unjust enrichment, plaintiffs must prove three

18   elements: (1) a benefit conferred by plaintiffs on the defendant; (2) an appreciation or knowledge

19   by defendant of the benefit; and (3) the acceptance or retention by defendant of the benefit under

20   such circumstances as to make it inequitable for defendant to retain the benefit.  *See United*

21   *States ex rel. Walton Tech., Inc. v. Westar Eng'g, Inc.*, 290 F.3d 1199, 1204 (9th Cir. 2002)

22   (interpreting Washington law).  Plaintiffs' unjust enrichment claim fails because there can be no

23   unjust enrichment claim where a contract governs the payments at issue.  *Id.*

24          If successful, a claim of unjust enrichment results in "a contract implied at law requiring

25   a party to make restitution to the extent he has been unjustly enriched."  *Farwest Steel Corp. v.*

26   *Mainline Metal Works, Inc.*, 48 Wn. App. 719, 731, 741 P.2d 58,  64-65 (1987) (citation

27

DEFENDANTS' MOTION TO DISMISS (C07-1639 RAJ) — 19
DWT 2132126v7 0052051-010826

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1  plaintiffs' declaratory judgment action must still be dismissed because any claim addressing

2  whether Verizon Wireless is legally permitted to pass on surcharges is preempted by the Federal

3  Communications Act.  *See Lozano*, 504 F.3d at 724 n.4 (billing and collection claims preempted

4  by FCA, only disclosure claims are permissible); *Riensche v. Cingular Wireless LLC*, 2007 U.S.

5  Dist. LEXIS 10958, at *2-*11 (W.D. Wash. March 22, 2007) (Zilly, J.).  Because there is no

6  substantial controversy as to whether Verizon Wireless adequately disclosed its intention to bill

7  and collect surcharges to recoup the costs of local taxes imposed on it, and because any claim as

8  to Verizon Wireless's authority to bill and collect surcharges is preempted by the Federal

9  Communications Act, plaintiffs' declaratory judgment claim should be dismissed.

## IV.   CONCLUSION

11      Defendants request that the Court dismiss plaintiffs' Amended Complaint in its entirety,

12  and with prejudice, for failure to state any claim upon which relief can be granted.

13  DATED this 28th day of December, 2007.

Davis Wright Tremaine LLP
Attorneys for Defendants
By /s/ Fred B. Burnside
   Fred B. Burnside, WSBA #32491
   fredburnside@dwt.com
   Stephen M. Rummage, WSBA #11168
   steverummage@dwt.com
   Charles Wright, WSBA #31940
   charleswright@dwt.com
   1201 Third Avenue, Suite 2200
   Seattle, Washington 98101-3045
   Telephone: (206) 622-3150
   Fax: (206) 757-7700

DEFENDANTS' MOTION TO DISMISS (C07-1639 RAJ) — 21
DWT 2132126v7 0052051-010826

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

# Exhibit D

The Honorable Richard A. Jones

1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
8                                    AT SEATTLE

9   BRIAN SMALE, individually and on behalf of
    all the members of the class of persons similarly
10  situated; DAN JUNT, individually and on behalf     CLASS ACTION
    of all the members of the class of persons
11  similarly situated; JULIE COOPER, individually     No.  C07-1639 RAJ
    and on behalf of all the members of the class of
12  persons similarly situated;                        DEFENDANTS' REPLY IN
                                                        SUPPORT OF MOTION TO
13                     Plaintiffs,                      DISMISS

14         v.                                           **Noted on Motion Calendar:**
                                                        **February 15, 2008**
15  CELLCO PARTNERSHIP, d/b/a VERIZON
    WIRELESS, a Delaware partnership, OLYMPIA
16  CELLULAR LIMITED PARTNERSHIP, a
    Delaware partnership, GRAYS HARBOR-
17  MASON LIMITED PARTNERSHIP, a
    Delaware partnership, SPOKANE MSA
18  LIMITED PARTNERSHIP, a Delaware
    partnership, SEATTLE SMSA LIMITED
19  PARTNERSHIP, a Delaware partnership,
    IDAHO RSA #1, LIMITED, a Delaware
20  partnership,

21                     Defendants.

22

23

24

25

26

27

DEFENDANTS' REPLY (C07-1639 RAJ)
DWT 2253950v10 0052051-010826

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1    *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106-07 & n. 13 (2d Cir. 2005); 4

2    H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS § 12.15, at 1241 (4th ed. 2002) (plaintiffs

3    may release "all claims, both potential and actual").   The Court should recognize Defendants'

4    expectation in agreeing to the *Campbell* settlement and hold Smale and Junt to their agreement.

### 3.    *Res Judicata* Bars Smale and Junt's Claims.

5

6            Plaintiffs provide no meaningful analysis of *res judicata* as an alternative to Verizon

7    Wireless's release defense.   Instead, they mistakenly assert that the claims in *Campbell* were

8    different and therefore *res judicata* does not apply.   Yet even if the Court finds that *Campbell*

9    involved different subject matter—and as shown above, it did not—*res judicata* still applies

10   precisely because it bars "parties from relitigating all issues connected with the action that were

11   *or could have been raised* in that action," but were not.   *Rein v. Providian Fin. Corp.*, 270 F.3d

12   895, 898-99 (9th Cir. 2001) (emphasis added).   Once Plaintiffs sued over a failure to disclose

13   allegedly hidden fees, they were obliged to join in that action *all* claims relating to hidden fees.

14   *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) (approval of class

15   action settlement bars subsequent litigation of issues that could have been raised earlier).

### B.    Exercising Contractually Reserved Rights Is Not Actionable.

16

17           Plaintiffs' Consumer Protection Act and contract claims turn on the allegation that

18   Verizon Wireless did not disclose that it would charge the Effect of City Tax surcharge.   But

19   Plaintiffs admit that the Customer Agreement allows Verizon Wireless to impose "charges related

20   to [Verizon Wireless's] governmental costs," and the Overview on the same document explains

21   that each bill "will include charges to recover … the costs of taxes … imposed on us."   Murrieta

22   Dec., Exs. D-F, at 2. [2]   Accordingly, Plaintiffs' claim hinges on an argument that either (a) a

---

23   [2] Plaintiffs concede that Verizon Wireless presents the Overview to Washington consumers at the point of sale, *see*
     FAC ¶ 3.1, and do not dispute receiving the Overview with their most recent Customer Agreements, but contend that

24   Verizon Wireless has not submitted evidence affirmatively showing receipt of these same disclosures "when they
     [initially] subscribed." Pl. Opp. at 4.  But because Plaintiffs Smale and Junt released all disclosure claims as part of

25   the *Campbell* settlement (and in fact dictated the form of Verizon Wireless's disclosures going forward), *see* Def.
     Mot. Dis., at 9-14, this new theory suggesting inadequate initial disclosures could apply only to Ms. Cooper.  But Ms.

26   Cooper does not deny that she received disclosures when she began service.  These disclosures include a Welcome
     Letter and the combined Customer Agreement and Overview, they were sent to Ms. Cooper in May 2004, and are

27   attached to the Declaration of Ana Diaz.  *See* Diaz Dec., Ex. A.  Those disclosures discuss Verizon Wireless's
     surcharges and explain it will "charge monthly fees (such as universal service and regulatory fees) related to our

---

DEFENDANTS' REPLY (C07-1639 RAJ) — 5
DWT 2253950v10 0052051-010826

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1   charge for the "Effect of City Tax" does not fall within the scope of the disclosure or (b) the

2   disclosure did not give notice that the burdens of government taxes would be passed through.  The

3   Court can reject both of these arguments as a matter of law, as Judge Zilly recently did.

4        **1.**     **Verizon Wireless's Disclosures Do Not Violate the CPA.**

5        Plaintiffs do not point to any theory under which the disclosures here would violate the

6   CPA.  Verizon Wireless told Plaintiffs what it would do, disclosed how it would do it, and did it.

7   Verizon Wireless used clear language in discussing known charges ("Federal Universal Service,

8   Regulatory and Administrative charges"), and clear categorical language in  reserving its power

9   for potential charges (i.e., to assess "charges related to our governmental costs," as the *Campbell*

10  settlement required).  *See* Murrieta Dec. Exs. A-C, at 2.  The use of categorical language does not

11  mean that a specific charge imposed pursuant to that power is deceptive—particularly where

12  Verizon Wireless also disclosed that it would bill Plaintiffs to recover the costs (i.e., the effect) of

13  taxes imposed on Verizon Wireless.  *See* Murrieta Dec., Exs. D-F, at 2.  As a matter of law, a fee

14  disclosure is not unfair or deceptive even where the exact amount is undetermined or subject to

15  change.  *Sheldon v. Am. States Preferred Ins. Co.*, 123 Wn. App. 12, 18, 95 P.3d 391 (2004) (fee

16  disclosure was not deceptive even though exact amount was undisclosed).

17       On the central issues, Judge Zilly's decision in *Riensche v. Cingular Wireless LLC*, 2007

18  U.S. Dist. LEXIS 83921 (W.D. Wash. Nov. 9, 2007), is directly on point, as Verizon Wireless's

19  disclosures are at least as informative as those upheld in *Riensche*.  There, the "gross receipts

20  surcharge" was not even "within the express contemplation of the Service Agreement," *id.* at *34,

21  and accompanying brochures explained only that Cingular would impose surcharges for

22  "revenue-based state and local assessments on Cingular."  *Id.* at *35.  Judge Zilly found that

23  ────────────────────

24  governmental costs," and that the fees "aren't required by law and are subject to change." *Id.* at 7 (CA-P.3); *see also id.* at 4 (CIO-P.3).  These disclosures thus satisfy any *Campbell* disclosure requirements potentially relevant here.

25  *See* RJN Ex. B ¶ IV(A)(2).  Likewise, the Welcome Letter (in bold text) specifies the Universal Service Charge rate, lists the amount of the current Regulatory Charge, explains that these are Verizon Wireless charges, not taxes on the consumer, and that "[t]axes, surcharges and other fees, *such as E911 and gross receipts charges*"—like the Effect of

26  City Tax surcharge—"can add between 6% and 28% to your monthly bill." *Id.* at 3.  Thus, Verizon Wireless expressly disclosed that a surcharge for taxes on its gross receipts might appear on Ms. Cooper's bill, and gave her an

27  estimate of total taxes, fees, and surcharges.  If, based on that disclosure, Ms. Cooper wanted to cancel service, she could do so within 15 days—without fees or costs. *Id.* at 6 (CA-P.1).  She did not do so. *See* FAC ¶¶ 1.3, 2.21.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1  to challenge the amount of the charge, Washington law requires them to give Verizon Wireless

2  notice and an opportunity to cure before filing suit.  Under RCW 35.21.873, the "first remedy

3  available to customers seeking … a refund of or other compensation for taxes, charges, and fees

4  erroneously collected" is for the customer to "notify the [carrier] in writing" and give 60 days and

5  an opportunity to cure.  *Id.*  No cause of action over the ***amount*** of this surcharge accrues until a

6  customer satisfies these requirements (which Plaintiffs do not allege they have done).  *Id.*; *Miller*,

7  2007 U.S. Dist. LEXIS 95194, at \*28 (dismissing class action for failure to provide notice).[5]

8         Finally, Plaintiffs' discussion of different costs and fees (both real and imagined) is yet

9  another distraction.  Pl. Opp. at 3-6.  Nothing in the Complaint alleges that Verizon Wireless uses

10  this surcharge as a "blank check" to collect vast sums from unsuspecting consumers unrelated to

11  governmental costs.  Pl. Opp. at 3 ("property, income and payroll taxes, unemployment insurance,

12  building permits, [or] FCC spectrum licenses); *id.* at 4 (termination fees, phone price, cross-

13  network portability, and number transferability); *id.* at 5-6 (administrative fee); *cf.* Murrieta Dec.

14  Exs. G-I, at 2 (explaining administrative fee).  Plaintiffs did not plead this "blank check" theory,

15  and they know enough to realize that they lack a reasonable basis for doing so.

**IV.    CONCLUSION**

16         Verizon Wireless told Plaintiffs that it would impose charges related to its governmental

17  costs, disclosed that some charges were to recover the effect of taxes imposed on it, and imposed

18  those charges through the line item "Effect of City Tax."  No principle of law supports Plaintiffs'

19  right to relief on these facts, and the Court should dismiss Plaintiffs' claims with prejudice.

20         DATED this 15th day of February, 2008.

                                        Davis Wright Tremaine,
21                                      Attorneys for Defendants
                                        By    */s/ Fred B. Burnside*
22                                            Fred B. Burnside, WSBA #32491
                                             fredburnside@dwt.com
23                                           Stephen M. Rummage, WSBA #11168
                                             steverummage@dwt.com
24                                           Charles Wright, WSBA #31940
                                             charleswright@dwt.com
25

---

26  [5] Plaintiffs repeatedly state that their lack of discovery somehow justifies denial of this motion. *E.g.*, Pl. Opp. at 1, 3.
    But no amount of discovery will affect the purely legal issues whether Verizon Wireless's disclosures have the
27  capacity to deceive a substantial portion of the public or whether Verizon Wireless breached its contract by charging
    the effect-of-city tax surcharge without expressly adopting that phrase in its point-of-sale disclosures.

DEFENDANTS' REPLY (C07-1639 RAJ) — 12
DWT 2253950v10 0052051-010826