UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

MICHAEL A. KATZ, individually and on behalf   :    No 12-cv-9193 (VB) (LMS)
of all others similarly situated,                   :
                                                        :

                            Plaintiff,      :
                                                        :

                vs.                             :
                                                         :

CELLCO PARTNERSHIP d/b/a/ VERIZON     :
WIRELESS,                                   :
                                                           :

                           Defendant.    :

---------------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO PARTIALLY CONFIRM AND PARTIALLY VACATE ARBITRATION AWARD

LAW OFFICES OF
WILLIAM R. WEINSTEIN
William R. Weinstein
199 Main Street, 4th Floor
White Plains, New York 10601
(914) 997-2205
wrw@wweinsteinlaw.com

ATTORNEY FOR PLAINTIFF

Dated: September 27, 2017

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ............................................................................... iii

PRELIMINARY STATEMENT ........................................................................ 1

A.    Katz's Motion Seeks To Partially Confirm And Partially Vacate The October 2016 Decision Under FAA §§ 9 & 10(a)(4) ....................................... 2

B.    Katz's Motion Seeks To Vacate The June 2017 Decision In Its Entirety Under FAA § 10 ................................................................................................... 3

C.    Katz's Motion Seeks To Vacate Under The Fifth Amendment The Rulings Of Law In The October 2016 Decision And The June 2017 Decision ................... 5

STATEMENT OF FACTS .................................................................................. 6

A.    Prior Proceedings And Katz's Arbitration Demand ............................ 6

B.    The AAA Denies Without Explanation Katz's Request For An Initial Determination Whether Section 3 Complies With The AAA Consumer Rules Due Process Standards And The *Consumer Due Process Protocol,* And His Request That The Arbitrator Be Appointed Under The Wireless Industry Arbitration Rules .................................................................................... 8

C.    The AAA Appoints An Arbitrator With No Demonstrable Telecommunications Or Consumer Expertise, And Cursorily Rejects Katz's Objections To His Appointment, Including The Fact That He Would Not Be Able To Adjudicate The Matter Under The Limited Consumer Rules Fee Cap Of $1500 ...................................................................................................... 9

D.    The AAA And the Arbitrator Independently Consult Four Weeks Later And Determine That He Should be Paid His Hourly Rate And Fees Substantially Exceeding The $1500 Cap, And Verizon Agrees To Pay Them ..................... 10

E.    The Arbitrator Issues His October 2016 Decision ............................ 11

F.    Katz's Objection To The Arbitrator's Continued Service And Request That He Be Disqualified Based On Substantial Evidence Of The Arbitrator's Lack Of Impartiality And Independence, And His Refusal To Perform His Duties "With Diligence And In Good Faith," Is Denied Without Explanation By The AAA ............................................................................................................ 12

G.    The Arbitrator Issues His June 2017 Decision ................................. 15

ARGUMENT ...............................................................................................................16

I.     THE ARBITRATOR'S RULINGS THAT EXCEEDED HIS POWERS OR
MANIFESTLY DISREGARDED THE LAW MUST BE VACATED
UNDER FAA § 10(a)(4).............................................................................16

     A.     The Arbitrator Exceeded His Authority In His October 2016 Decision
By Ruling On The Legal Merits Of Katz's GBL § 349 Claim For
General Injunctive Relief After Ruling That Section 3 Of The
Arbitration Agreement Prohibited The Arbitrator From Awarding It ...................16

     B.     Assuming Arguendo The Arbitrator Had The Authority To Rule On
The Legal Merits of Katz's Entitlement To Pursue General Injunctive
Relief Under GBL § 349, His Ruling Manifestly Disregarded The Law .............17

     C.     The Arbitrator's Ruling Binding Katz To Verizon's Rejected,
Incomplete Tender, And Consequently Denying Katz's Contract, GBL
§ 349 And Accounting Claims, Manifestly Disregarded The Law .......................19

     D.     The Arbitrator's Attorney's Fees Award To Katz Exceeded His
Powers ...............................................................................................................20

II.     THE JUNE 2017 DECISION MUST BE VACATED IN ITS ENTIRETY
UNDER FAA §§ 10(a)(3) AND 10(a)(2)............................................................20

III.     THE COURT SHOULD VACATE THOSE PARTS OF THE OCTOBER
2016 AND JUNE 2017 DECISIONS THAT CONSTITUTE RULINGS OF
LAW, ON THE GROUND THAT KATZ'S INVOLUNTARY CONSENT
TO THE STANDARD OF REVIEW IMPOSED BY CONGRESS UNDER
FAA §10(a)(4) VIOLATES KATZ'S CONSTITUTIONAL RIGHT TO
JUDICIAL REVIEW WITH RESPECT TO QUESTIONS OF LAW
REQUIRED UNDER THE DUE PROCESS CLAUSE OF THE FIFTH
AMENDMENT....................................................................................................22

CONCLUSION............................................................................................................25

# TABLE OF AUTHORITIES

*Page*

**CASES:**

*AT&T Mobility LLC v. Bernardi,* 11 Civ. 03992, 11 Civ. 04412,
   2011 WL 5079549 (N.D. Cal. Oct. 26, 2011) ................................................. 17

*AT&T Mobility LLC v. Fisher,* 11 Civ. 2245,
   2011 WL 5169349 (D. Md. Oct. 28, 2011) ...................................................... 17

*AT&T Mobility LLC v. Gonnello,* 11 Civ. 5636,
   2011 WL 4716617 (S.D.N.Y. Oct. 7, 2011) ..................................................... 17

*AT&T Mobility LLC v. Smith,* 11 Civ. 5157,
   2011 WL 5924460 (E.D. Pa. Oct. 7, 2011)....................................................... 17

*Barkley v. United Homes, LLC,*
   848 F. Supp. 2d 248 (E.D.N.Y. 2012) ............................................................. 18

*Bowen v. Amoco Pipeline Co.,*
   254 F.3d 925 (10th Cir. 2001) ................................................................. 6, 24

*Crowell v. Benson,*
   285 U.S. 22 (1932)................................................................................. 22

*Davis v. Prudential Sec., Inc.,*
   59 F.3d 1186 (11th Cir. 1995) ................................................................. 6, 24

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S,*
   333 F.3d 383 (2d Cir. 2003)........................................................................ 23

*Emilio v. Sprint Spectrum, L.P.,*
   508 F. App'x 3 (2d Cir. 2013) ...................................................................... 17

*Geismann v. ZocDoc, Inc.,*
   850 F.3d 507 (2d Cir. 2017)..................................................................... 4, 19

*Hall Street Assoc., L.L.C. v. Mattel, Inc.,*
   552 U.S. 576 (2008).............................................................................. 6, 23

*Horn Waterproofing Corp. v. Bushwick Iron & Steel Co.,*
   66 N.Y.2d 321 (1985) ........................................................................ 4, 19-20

*In re Tempo Shain Corp. v. Bertek, Inc.,*
   120 F.3d 16 (2d Cir. 1997)........................................................................... 21

*Jock v. Sterling Jewelers Inc.,*
    646 F.3d 113 (2d Cir. 2011)......................................................................1, 2-3, 5, 16

*Katz v. Cellco P'shp,*
    2013 WL 6621022 (S.D.N.Y. Dec. 12, 2013),
    *aff'd in part, vacated in part and remanded,* 794 F.3d 341 (2d Cir.),
    *cert. denied,* 136 S. Ct. 596 (2015) ................................................................ 6, 24

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust,*
    729 F.3d 99 (2d Cir. 2013)................................................................................ 21

*McDonald v. North Shore Yacht Sales, Inc.,*
    513 N.Y.S.2d 590 (Sup. Ct. Nassau County 1987)........................................... 18

*Moseley, Hallgarten, Estabrook, & Weeden, Inc. v. Ellis,*
    849 F.2d 264 (7th Cir.1988) ............................................................................. 23

*N.Y. Pub. Interest Research Group, Inc. v. Ins. Info. Inst.*
    531 N.Y.S.2d 1002 (Sup. Ct. N.Y. County 1988) ............................................ 18

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,*
    85 N.Y.2d 20, 24-25 (1995)............................................................................. 18

*Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.,*
    668 F.3d 60 (2d Cir. 2012)................................................................................ 21

*Schatz v. Cellco P'shp,*
    842 F. Supp. 2d 594 (S.D.N.Y. 2012)............................................................... 17

*Schwartz v. Merrill Lynch & Co., Inc,*
    655 F.3d 444 (2d Cir. 2011).............................................................................. 16

*Stolt-Nielsen, S.A. v. AnimalFeeds Int 'l Corp.,*
    559 U.S. 662 (2010).......................................................................................9, 19

*Stroh Container Co. v. Delphi Industries, Inc.,*
    783 F.2d 743 (8th Cir. 1986) ............................................................................ 23

*Sulner v. General Acc. Fire & Life Assur. Corp.,*
    471 N.Y.S.2d 794 (Sup. Ct. N.Y. County 1984) ..........................................18-19

*T.Co. Metals, LLC v. Dempsey Pipe & Supply, Inc.,*
    592 F.3d 329 (2d Cir. 2010).............................................................................. 23

*Todd Shipyards Corp. v. Cunard Line, Ltd.*
    943 F.2d 1056 (9th Cir. 1991) ........................................................................ 6, 24

*Wellness Int'l Network, Ltd. v. Sharif*,
    135 S. Ct. 1932 (2015) ................................................................................... 6, 24

## CONSTITUTIONAL PROVISIONS, STATUTES & REGULATIONS:

U.S. Constitution, Amendment V, Cl. 3, Due Process Clause ...................... 1, 5, 6, 22, 23, 24, 25

Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.* ...................................................... 1

FAA § 9 .......................................................................................................... 1, 2, 25

FAA § 10 ............................................................................................................. 1, 25

FAA § 10(a)(2) ............................................................................................... 5, 20, 21

FAA § 10(a)(3) ........................................................................................... 5, 20, 21, 22

FAA § 10(a)(4) ................................................................................................. *passim*

17 C.F.R. § 166.5(b) ............................................................................................... 24

17 C.F.R. §§ 166.5(b) & (c) .................................................................................... 24

17 C.F.R. § 166.5(c)(1) ...................................................................................... 24-25

17 C.F.R. § 166.5(c)(7) ........................................................................................... 25

New York General Business Law ("GBL") § 349 ............................................. *passim*

## RULES & MISCELLANEOUS:

American Arbitration Association ("AAA") *Consumer Due Process Protocol* ........................ 8, 9

AAA Consumer Rule R-14(a) ................................................................................ 8, 19

AAA Consumer Rule R-19 ......................................................................................... 13

Plaintiff Michael A. Katz respectfully submits his brief in support of his motion for an Order:

(i)  pursuant to 9 U.S.C. §10 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, partially confirming and partially vacating the October 28, 2016 Decision on Motion for Partial Summary Disposition ("October 2016 Decision") issued by the Arbitrator in the American Arbitration Association ("AAA") arbitration captioned *Katz v. Cellco P'shp d/b/a Verizon Wireless,* AAA Case 01-16-000 l-2209, and vacating in full the Arbitrator's June 29, 2017 Decision on Motion for Judgment on the Pleadings ("June 2017 Decision"); and

(ii)  vacating those parts of the October 2016 Decision and the June 2017 Decision that constitute rulings of law, on the ground that Katz's involuntary consent to the standard of review imposed by Congress under FAA §10(a)(4) violates Katz's constitutional right to judicial review with respect to questions of law required under the Due Process Clause of the Fifth Amendment to the United States Constitution.[1]

## PRELIMINARY STATEMENT

Katz's motion for an order partially confirming the Arbitrator's October 2016 Decision is governed by FAA § 9, which states that "the the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11." Katz's motion to partially vacate the October 2016 Decision, and to vacate the June 2017 Decision in full, is governed by FAA § 10, which prescribes the following grounds for vacatur: "corruption, fraud, or undue means in procurement of the award, evident partiality or corruption in the arbitrators, specified misconduct on the arbitrators' part, or 'where the arbitrators exceeded their powers.'" *Jock v. Sterling Jewelers Inc.,* 646 F.3d 113, 121 (2d Cir. 2011) (quoting *Wall Street Assocs., L.P. v. Becker Paribas Inc.,* 27 F.3d 845, 848 (2d Cir.1994)).

---

[1] Plaintiff Michael A. Katz is referred to as "Katz," and defendant Cellco P'shp d/b/a Verizon Wireless is referred to as "Verizon." Accompanying this brief is the September 27, 2017 Declaration of William R. Weinstein ("Weinstein Decl.") with exhibits. Weinstein Decl., Ex. 1, is the October 2016 Decision, and Weinstein Decl., Ex. 2, is the June 2017 Decision. Weinstein Decl., Ex. 3, is Katz's First Amended Demand for Arbitration, dated May 9, 2016, which was and is the operative arbitration demand for the arbitration and in connection with these proceedings ("Demand") (*see also* Dkt. No. 51-3). Unless otherwise noted, all references to "Ex. __" are to the exhibits of the Weinstein Declaration.

**A.      Katz's Motion Seeks To Partially Confirm And Partially Vacate The October 2016 Decision Under FAA §§ 9 & 10(a)(4)**

Katz seeks to confirm the part of the October 2016 Decision where the Arbitrator upheld the enforceability of Section 3 of the parties' arbitration agreement (Dkt. No. 51-1, at .pdf 8), which provides:

> THE ARBITRATOR MAY AWARD MONEY OR INJUNCTIVE RELIEF ONLY IN FAVOR OF THE INDIVIDUAL PARTY SEEKING RELIEF AND ONLY TO THE EXTENT NECESSARY TO PROVIDE RELIEF WARRANTED BY THAT PARTY'S INDIVIDUAL CLAIM. (capitalization in original) (bold omitted).

Construing this provision of the arbitration agreement, the Arbitrator held that: (i) "[t]he arbitrator has no authority to ignore the terms of the Verizon Wireless Customer Agreement with regard to the scope of any award and to grant general injunctive relief for the benefit of others than the individual Claimant party"; (ii) Katz "is bound by the terms of the Verizon Wireless Customer Agreement entered between the parties," and (iii) as a part of the arbitration, the "Arbitrator will not award any form of injunctive relief for the benefit anyone [sic] who is not a party to this arbitration." October 2016 Decision, at 3.

Katz seeks under FAA § 10(a)(4) to vacate the portion of the October 2016 Decision where the Arbitrator nevertheless also decided and held, as a matter of law, that Katz "lacks authority under GBL Sec. 349 to seek injunctive relief on behalf of others not a party to this arbitration." October 2016 Decision, at 2. Because the Arbitrator held that Section 3 was enforceable and precluded the Arbitrator 's authority to award general injunctive relief as part of the arbitration, the Arbitrator lacked the authority to decide the legal merits of Katz's right under GBL § 349 to obtain the general injunctive relief the Arbitrator could not award. Thus, the Arbitrator "exceeded his powers" under the arbitration agreement in contravention of FAA § 10(a)(4) by deciding that legal issue, and his legal holding on that issue must be vacated. *Jock,*

646 F.3d at 122.[2] Alternatively, if the legal holding did not exceed the Arbitrator's powers, then it must be vacated as constituting "manifest disregard" of the law.

**B.    Katz's Motion Seeks To Vacate The June 2017 Decision In Its Entirety Under FAA § 10**

The Arbitrator's June 2017 Decision can be broken down into four distinct holdings:

(i)  First, the Arbitrator denied Katz's individual request for injunctive relief under GBL § 349 to enjoin the continued imposition of the Administrative Charge at issue in the case (*see* Statement of Facts, below) insofar as the charge included amounts that were not government mandated or government related costs. Although it was undisputed that Katz paid all of utilities and substantially all other material household expenses for him and his non-marital partner— including the Verizon bills that included his own wireless phone—the Arbitrator decided that because Katz "no longer is the owner of the account and … is not billed by Verizon," Katz "is not a customer of Verizon and … has no obligation to pay the Verizon bill of his non-marital partner and therefore lacks standing to seek individual injunctive relief under GBL Sec. 349." June 2017 Decision, at 3.

(ii)  Second, the Arbitrator ruled that Verizon "shall pay [Katz] the sum of $1500, without interest," based on a December 13, 2016 tender by Verizon to Katz of a check for $1500 "without prejudice" and without "admit[ting] liability with regard to any of the claims asserted" by Katz in the arbitration (*see* Ex. 4) ("Tender")—even though it was undisputed that Katz had "rejected and refused" the Tender, and that the Tender was "incomplete relief since it does not contain individual injunctive relief and an award of attorney fees to [Katz]." June 2017 Decision, at 3; *see also* Ex. 4, at 3.

---

[2] The Arbitrator's stated reason for his holding was that "[w]hile Section 349 of the GBL grants authority to the Attorney General of New York State to seek relief on behalf of all Verizon customers, there is no language in the statute granting the same power to individuals." October 2016 Decision, at 2.

(iii)  Third, having directed Verizon to pay $1500 to Katz, the Arbitrator denied Katz's

request for an accounting, *id.*—which was sought by Katz "to determine the split of the

administrative charge between government and non-government portion of the charge." *Id.* at 2.

(iv)  Fourth, the Arbitrator awarded Katz attorney's fees in the amount of $500 (*see* June

2017 Decision, at 4), without requesting or being provided any documentation for those fees—

even though the Tender stated that the parties would first attempt to negotiate attorney's fees

based on documentation provided by Katz to Verizon, and failing that, the matter would be put to

the Arbitrator. *See* Tender, at 2.[3]

Several of the June 2017 Decision's holdings are clearly subject to vacatur under §

10(a)(4). As further discussed below, by forcing the unaccepted, incomplete and "without

prejudice" Tender on Katz, the Arbitrator manifestly disregarded clearly controlling Second

Circuit and New York state law, which Katz provided to the Arbitrator, but which the Arbitrator

simply ignored. *See Geismann v. ZocDoc, Inc.,* 850 F.3d 507, 514 (2d Cir. 2017) (plaintiff

cannot be bound by offer of judgment that had been rejected and did "nothing to satisfy the

demand for injunctive relief"); *Horn Waterproofing Corp. v. Bushwick Iron & Steel Co*., 66

N.Y.2d 321, 331-32 (1985) (even assuming accord and satisfaction applies to GBL § 349 claim

as well as contract claim, acceptance of tender under protest "preclude[s] an accord and

satisfaction or any other prejudice to the rights thus reserved"). *See also* Ex. 5, at .pdf 2-4 (email

chain to Arbitrator citing *Geismann* and *Horn Waterproofing* as controlling and providing

Arbitrator with copy of *Horn Waterproofing*). Similarly, the Arbitrator exceeded his authority by

---

[3] The June 2017 Decision, at 4, expressly incorporated the October 2016 Decision, which had not
been a "final award" standing on its own. The June 2017 Decision also stated: "This Decision is
in full settlement of all claims submitted to this arbitration. All claims not expressly granted and
are, hereby denied." *Id.* Thus, if Katz's breach of contract and GBL § 349 damage claims
(Demand ¶¶ 70-73, 74-80) weren't extinguished by the Arbitrator's forced imposition of the
Tender on Katz and the related denial of Katz's request for an accounting, this language did so.

4

unilaterally awarding Katz $500 of attorney's fees when the plain terms of the Tender Verizon sought to enforce provided that the parties would first attempt to negotiate the fees and come back to the Arbitrator if they were not able to reach an agreement. *See Jock,* 646 F.3d at 122 (arbitrator exceeds authority by considering issues beyond those submitted for his consideration).

FAA § 10(a)(4), however, is not the grounds under which Katz seeks vacatur of the entirety of the June 2017 Decision. As further discussed below, the Arbitrator violated FAA § 10(a)(3), *inter alia,* by refusing to allow Katz to obtain evidence from Verizon necessary to establish damages under his breach of contract and GBL § 349 claims—among other reasons because the Arbitrator "knew" that Katz wanted the evidence so he could "use it in another case against Verizon." Forcing the Tender on Katz conveniently obviated Katz's entitlement to the evidence and his right to establish his damages—which, of course, would be highly material if the Arbitrator exceeded his authority in ruling in the October 2017 Decision on the legal merits of Katz's claim for general injunctive relief under GBL § 349. There is much more improper conduct detailed in the Statement of Facts, below. But adding it all up in its totality supports the complete vacatur of the June 2017 Decision, either for the Arbitrator's grossly prejudicial conduct under FAA § 10(a)(3), or his "evident partiality" under § 10(a)(2), or both.

## C. Katz's Motion Seeks To Vacate Under The Fifth Amendment The Rulings Of Law In The October 2016 Decision And The June 2017 Decision

Finally, Katz seeks to vacate those parts of the October 2016 Decision and the June 2017 Decision that constitute rulings of law, on the ground that Katz's involuntary consent to the extremely limited standard of review imposed by Congress under FAA § 10(a)(4) violates Katz's constitutional right to judicial review with respect to questions of law required under the Due Process Clause of the Fifth Amendment to the United States Constitution. As discussed below, the decisions of three circuit courts addressing the issue all rely, in significant part, on the

"voluntariness" of the agreement to arbitrate to reject the Due Process Fifth Amendment challenges. *See Todd Shipyards Corp. v. Cunard Line, Ltd.* 943 F.2d 1056, 1063-64 (9th Cir. 1991) (focusing on voluntary agreement to arbitration to reject due process challenge); *Davis v. Prudential Sec., Inc.,* 59 F.3d 1186, 1193 (11th Cir. 1995) (same, citing *Todd*); *Bowen v. Amoco Pipeline Co.,* 254 F.3d 925, 940 (10th Cir. 2001) (same, citing *Todd*). Further, the recent decision of the Supreme Court in *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1948 (2015), which was issued after this Court's December 2013 decision in this case (Dkt. No. 39), confirms by analogy that the "knowing and voluntary" standard requires that Katz "was made aware of the need for consent and the right to refuse it"—undisputedly absent in this case. This standard is constitutionally mandated, and does not depend on the enforceability of the arbitration agreement under state law. Because the extremely limited standard of review Congress has imposed under FAA § 10(a)(4) cannot be varied by agreement of the parties, *see Hall Street Assoc., L.L.C. v. Mattel, Inc.,* 552 U.S. 576, 583 (2008), the involuntary deprivation of judicial review violates Katz's right to Due Process.

## STATEMENT OF FACTS

### A.  Prior Proceedings And Katz's Arbitration Demand

This Court's December 12, 2013 Memorandum Decision compelling Katz to arbitrate his claims against Verizon was affirmed by the Second Circuit, subject to the Second Circuit's determination that the case should have been stayed rather than dismissed. *Katz v. Cellco P'shp,* 2013 WL 6621022 (S.D.N.Y. Dec. 12, 2013) (VB), *aff'd in part, vacated in part and remanded,* 794 F.3d 341 (2d Cir. 2015). By Order dated August 26, 2015, this Court stayed the action pending arbitration (Dkt. No. 46). Katz's petition for writ of certiorari was denied by the United States Supreme Court on December 7, 2015. *Katz v. Cellco P'shp,* 136 S. Ct. 596 (2015).

During early 2016, the parties unsuccessfully discussed a possible negotiated resolution of Katz's claims. On April 7, 2016, Katz filed his Demand for Arbitration with the AAA (Dkt. No. 51-2 (w/o exhibits)), and the arbitration was commenced by the AAA *sub nom. Katz v. Cellco P'shp d/b/a Verizon Wireless,* AAA Case 01-16-000 l-2209. Katz filed his First Amended Demand for Arbitration on May 9, 2016 (Demand, Ex. 3), and that was and is the operative arbitration demand for the arbitration and in connection with these proceedings. On May 27, 2016, this Court entered an Order, in effect, directing Verizon back to the arbitration to arbitrate Katz's claims asserted in his Demand (Dkt. No. 62; *see also* Dkt. No. 63 (Transcript of May 27, 2016 telephonic conference) ("Transcript")).

Katz's Demand alleges that that Verizon's Administrative Charge line item is a hidden price increase being used to recover general operating costs rather than government mandated and government related costs, in violation of the Customer Agreement and the New York deceptive practices statute, General Business Law ("GBL") § 349 (e.g., Demand ¶¶ 1-7). Katz asserted four claims for relief in his Demand.

Katz's First Claim for Relief (Demand ¶¶ 64-69) sought an initial declaration by the AAA or, alternatively, a ruling by the Arbitrator, regarding the enforceability of Verizon's prohibition in Section 3 of the arbitration agreement on the Arbitrator's power to award "general injunctive relief" (quoted Preliminary Statement, Section A, above, *see also* Dkt. No. 51-1, at .pdf 8) and the arbitrability of such claim, as a predicate to pursuing the claim on the merits, *see* Demand at ¶ 69; *see also* Transcript (Dkt. No. 63), at 12:3-12:13:

> 69.    [The] AAA pursuant to Consumer Rule R-1(d) should declare in the first
> instance as a preliminary matter whether Section 3 of the Arbitration Agreement
> complies with the due process standards of the Consumer Rules and the *Consumer Due
> Process Protocol*. If the AAA determines that Section 3 does comply, then the Arbitrator
> should determine pursuant to Consumer Rule R-14(a) whether Section 3 is enforceable so
> as to limit the Arbitrator's authority to issue general injunctive relief sought by Katz

herein. If the AAA initially determines that Section 3 does not comply, or if the Arbitrator determines that the provision is enforceable, then Katz's claim for general injunctive relief asserted herein should be determined to be "not arbitrable," and therefore that claim or the entirety of Katz's claims asserted in the arbitration are subject to submission to the District Court for resolution.[4]

Katz's Second and Third Claims for Relief asserted claims for damages for breach of contract and violations of GBL § 349 (Demand ¶¶ 70-73, ¶¶ 74-80, respectively). And Katz's Fourth Claim for Relief (Demand, ¶¶ 81-83 at ¶¶ 82-83) sought two different forms of injunctive relief under GBL § 349, which expressly authorizes Katz to "bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions":

> 82.     The Arbitrator should issue an injunction under GBL § 349 requiring Verizon to account for the components of the Administrative Charge it has charged and collected from Katz to determine what portion of the charges imposed are *not* government mandated and government related costs, and what portion of the charges, if any, are comprised of government mandated and government related costs.

> 83.     Additionally, the Arbitrator should issue an injunction enjoining Verizon from continuing to engage in deceptive practices violating GBL § 349 in connection with the Administrative Charge for all of its existing and future New York customers.

**B.     The AAA Denies Without Explanation Katz's Request For An Initial Determination Whether Section 3 Complies With The AAA Consumer Rules Due Process Standards And The *Consumer Due Process Protocol,* And His Request That The Arbitrator Be Appointed Under The Wireless Industry Arbitration Rules**

As noted above, Demand ¶ 69 expressly sought an initial determination by the AAA whether Section 3 of the arbitration agreement complies with the due process standards of Consumer Rule 14(a) and the *Consumer Due Process Protocol*. By letter to the AAA dated May 9, 2016 (the same date as his Demand), Katz requested that ruling from the AAA (Ex. 6, at 3-4).

Because Section 2 of the arbitration agreement (Dkt. No. 51-1, at .pdf 7) expressly provided that the Wireless Industry Arbitration ("WIA") Rules would apply because Katz had

---

[4] A copy of the relevant AAA Consumer Rules is included as Ex. 17.

elected for them to apply in his Demand (at 1, and ¶¶ 21-23), Katz also requested that the

Arbitrator be selected from the AAA Telecommunications Panel and possess the necessary

expertise to adjudicate Katz's wireless telephone claims, because one benefit of arbitration is

"the ability to choose expert adjudicators to resolve specialized disputes." *See* Ex. 6, at 4-6,

*quoting Stolt-Nielsen, S.A. v. AnimalFeeds Int 'l Corp.,* 559 U.S. 662, 685 (2010).

The AAA did not expressly rule on or address the issue regarding whether Section 3

complied with the due process standards of Rule 14(a) and the *Consumer Due Process Protocol*.

Instead, it simply issued an email on May 14, 2016 stating that "[t]he AAA has determined the

Consumer Rules apply and will proceed under the before-said rules unless we receive party

agreement to apply the Wireless Rules" (Ex. 7). Of course, the parties already had agreed that the

WIA Rules would apply, as Katz made clear in his May 9, 2016 letter (Ex. 6, at 4-5).

**C.      The AAA Appoints An Arbitrator With No Demonstrable Telecommunications Or
          Consumer Expertise, And Cursorily Rejects Katz's Objections To His Appointment,
          Including The Fact That He Would Not Be Able To Adjudicate The Matter Under
          The Limited Consumer Rules Fee Cap Of $1500**

The proceedings were held in abeyance until this Court ordered Verizon back to the

arbitration on May 27, 2016 (Dkt. No. 62). On June 8, 2016, the parties were advised that the

AAA had appointed Charles T. Bistany as Arbitrator (Ex. 8, at .pdf 2), and were provided by the

AAA with the following documents: (i) the AAA June 8 transmittal letter; (ii) the Notice of

Compensation Arrangements limiting the Arbitrator's compensation for the consumer case to

$1500 for each hearing day and $0 for "study time"—which the Arbitrator affirmatively

acknowledged (Ex. 8, at .pdf 6); (iii) the Notice of Appointment and General Arbitrator Oath

Form, on which the Arbitrator again affirmatively acknowledged that he had "reviewed the

Notice of Compensation Arrangements for this case" (Ex. 8, at .pdf 9); and (iv) the Arbitrator's

resume (Ex. 8, at .pdf 10-11).

On June 15, 2016, Katz timely objected to the appointment of the Arbitrator, and reiterated those objections on June 16 in reply to Verizon's response (Ex. 9, at .pdf 3-4; 2-3). Katz's grounds included: (i) the Arbitrator "has absolutely no consumer arbitration or litigation experience, and no telecommunications arbitration or litigation experience," despite the fact that the "case presents very complex wireless telecommunications-related issues"; and (ii) in light of the Arbitrator's "hourly rate at $325 and that the AAA has imposed a fee cap of $1500 with no additional compensation for study time," "to proceed with this arbitration as a 'run-of-the-mill' consumer dispute under a completely inadequate fee schedule raises serious due process issues." *Id.*, at .pdf 3-4 (Katz June 15 objections), .pdf 2 (Katz June 16 reply).

The AAA overruled Katz's objections by letter dated June 22, 2016 (Ex. 10). This is the extent of its "explanation":

> Please be advised the Arbitrator was selected from the Consumer panel although his resume may not state all his experience in a particular field. Inasmuch as this is a Consumer matter, the Arbitrator is entitled to a flat rate of $1500 per each day of hearing in which the business is responsible for.

**D.    The AAA And the Arbitrator Independently Consult Four Weeks Later And Determine That He Should be Paid His Hourly Rate And Fees Substantially Exceeding The $1500 Cap, And Verizon Agrees To Pay Them**

An initial preliminary hearing among the parties and the Arbitrator was held on July 11, 2016. Among the issues discussed but not decided was whether the arbitration would be conducted under the Consumer Rules in combination with the WIA Rules as provided in Section 2 of the arbitration agreement (Dkt. No. 51-1, at .pdf 7), or the AAA Commercial Rules. A continuation of the preliminary hearing was scheduled for the following Tuesday, July 19.

The day before the July 19 conference, on July 18, the AAA Case Administrator sent the parties (but not the Arbitrator) an email stating that she had spoken with the Arbitrator, and (Ex. 11, at .pdf 4-5):

Inasmuch as the parties are requesting to use the Commercial Rules in this matter. [sic] Please be mindful that if you are in agreement to move this matter, the Claimant will be assessed a higher filing fee and a final fee. With that being said, if you are in agreement to keep this matter with the Consumer Rules, there will only be an additional administrative fee of $500.00 for the final fee and we can customize the process and rules so long as you are both in agreement. I think it would be fair to pay the Arbitrator's hourly rate as this case would be outside of the Consumer/Expedited parameters.

In follow-up emails, Katz clarified that he had no obligation to pay any arbitrator and administrative fees, that it was Verizon's obligation under both the arbitration agreement and the AAA Consumer Rules, and that the parties were not requesting to use the Commercial Rules but the Arbitrator would decide whether the WIA Rules or Commercial Rules would apply in combination with the Consumer Rules (Ex. 11, at .pdf 4).

During the follow-up July 19 conference, the Arbitrator rejected Katz's proposal that "it is most efficient for the Arbitrator and the parties to conduct discovery on and decide the substantive merits of Katz's contract and GBL § 349 deceptive practice claims *first*, because the claims will have to be arbitrated and decided in all events, and the denial of his GBL § 349 claim would moot his claim for 'general injunctive relief' and the need for anyone to expend any resources on it" (Ex. 11, at .pdf. 6). Instead, the Arbitrator determined that the parties would first brief Katz's right to obtain general injunctive relief in the arbitration under GBL § 349, and that the arbitration would proceed under both the Consumer and Commercial Rules, rather than the WIA Rules incorporated into the arbitration agreement. *Id.* at 3. Verizon also agreed that it would pay all filing, administrative and arbitrator fees, including the Arbitrator's additional fees at his "designated hourly rate" (*id.*).

## E.    The Arbitrator Issues His October 2016 Decision

Briefing on Verizon's motion for summary disposition on the issue of Katz's right to obtain general injunctive relief in the arbitration under GBL § 349 was concluded at the end of

September 2016, and the Arbitrator issued his decision on October 28, 2016 (Ex. 1). The October

2016 Decision is discussed at length in Section A of Preliminary Statement, above. In addition to

that discussion, Katz notes that, consistent with Demand ¶ 69, Katz requested a ruling from the

Arbitrator that if Section 3 was enforceable then Katz's claim for general injunctive relief was

not arbitrable—but the Arbitrator did not specifically address Katz's request, except to confirm

that he lacked the authority under Section 3 to award general injunctive relief and would not

"award any form of injunctive relief for the benefit anyone who is not a party to this arbitration."

October 2016 Decision, at 3.

And one other thing. At the conclusion of the October 2016 Decision (at 3), the

Arbitrator assessed AAA administrative fees and compensation and expenses of the Arbitrator

"in the sum of $7,962.50 on this motion." There was no breakdown between the AAA

administrative fees and the Arbitrator's compensation and expenses, but the June 2017 Decision

(Ex. 2, at 4) confirms that all $7,962.50 was Arbitrator compensation—more than five times the

$1500 cap the Arbitrator agreed to twice in connection with his appointment (Ex. 8, .pdf 4, 6, 9).

**F.     Katz's Objection To The Arbitrator's Continued Service And Request That He Be
         Disqualified Based On Substantial Evidence Of The Arbitrator's Lack Of
         Impartiality And Independence, And His Refusal To Perform His Duties "With
         Diligence And In Good Faith," Is Denied Without Explanation By The AAA**

A follow-up conference on how to proceed after the issuance of the October 2016

Decision was held among the parties and the Arbitrator on December 16, 2016. However, as

noted in Section B of the Preliminary Statement, above, on December 13, 2016 Verizon

delivered the Tender to Katz's counsel, including the $1500 check—but "without prejudice" and

without "admit[ting] liability with regard to any of the claims asserted" by Katz in the arbitration

(*see* Ex. 4). Thus, a central topic of discussion was how to proceed in light of the Tender.

On February 28, 2017, Katz submitted to the AAA his "Consumer Rule R-19 Objection to Continued Service by and Request for Disqualification of Arbitrator Charles Bistany" ("Disqualification Request") (Ex. 12, at 1, Weinstein Decl. ¶ 13).[5] The grounds for Katz's Disqualification Request were events during the December 16, 2016 conference call, and the Arbitrator's resulting December 19, 2017 report on that call establishing the issues to be briefed (Ex. 13). Those grounds are as follows:

(i)   The Arbitrator denied Katz's right to take even limited discovery on the issue whether Verizon's Administrative Charge included non-governmental mandated and non-government related costs—the gravamen and essential basis for Katz's breach of contract and GBL § 349 claims. Katz even offered to accept an affidavit from Verizon detailing the component parts of the charge. In response, the Arbitrator stated as follows, in words or in substance: "*I know why you want it. You want it so you can use it in another case against Verizon.*" The Arbitrator was unpersuaded by Katz's agreement that he would keep it confidential. (Ex. 12, at 3-4).

(ii)   When Katz advised the Arbitrator that under the Federal Arbitration Act the refusal by the Arbitrator to hear relevant evidence was grounds for vacating his award, and necessarily entails the refusal to allow Katz to obtain that evidence, the Arbitrator stated (incredibly): "*What does the Federal Arbitration Act [or FAA] have to do with this? I know the Consumer Rules and there is no mention of the FAA in those rules.*" (Ex. 12, at 4-5).[6]

(iii)   The Arbitrator indicated that he had decided Katz's entitlement to injunctive relief even before it had been briefed. When discussing briefing on the issue, Katz confirmed that although the account had been transferred into the name of his cohabiting non-marital partner,

---

[5] *See* Ex. 17. Rule 19 is also quoted in relevant part on page 1 of the Disqualification Request.

[6] Section 1 of the Arbitration Agreement also expressly provides that the FAA applies (Dkt. No. 51-1, at .pdf. 7).

Rita Lenda, he continued to have multiple lines in Katz's name and he continued to pay all charges on the account including the Administrative Charge. When the Arbitrator asked and Katz again confirmed that the account was no longer in Katz's name but that Katz still paid all of the charges, the Arbitrator actually *scoffed* at the response, and then challenged Katz as follows, in words or in substance: "Can you cite any case that says someone who voluntarily pays a charge has a claim for those payments under GBL § 349?" And when Katz stated he was not paying the account charges voluntarily but by agreement regarding the sharing of expenses with his partner he lived with, the Arbitrator made it clear he did not find that factor persuasive (Ex. 12, at 5-6).

(iv)  In light of the Arbitrator's clearly expressed view regarding Katz's entitlement to the injunctive relief, Katz proposed that to eliminate the issue, he could just add Rita Lenda to the Demand, since she was already identified in the Demand. The Arbitrator unilaterally and without hesitation or reason rejected the proposal out of hand: "*Oh no you're not. You aren't adding another party to this arbitration. If you want to seek an injunction on behalf of her, then bring another separate arbitration with that claim.*" Not only is there nothing in the Consumer Rules that prohibits the addition of another party, but the Filing Fees section of the Consumer Rules expressly contemplates the AAA increasing the daily or per-case arbitrator compensation because of "the addition of a new party" (Ex. 12, at 6-7, Ex. 17, at .pdf 10).

(v)  Initially, when the Arbitrator was advised of Verizon's Tender and the fact that Katz rejected it because there was no admission of liability or agreement to an entry of judgment, the Arbitrator's first inclination was that there was nothing he could do if the offer had been rejected. But after all of the above occurred, when Verizon proposed that it had tendered more than the full amount of Katz's damages and that Katz should be precluded from pursuing his damages claims even though he had not accepted the Tender, the Arbitrator agreed with Verizon that this

was an issue that should be briefed (Ex. 12, at 6-8). In framing that issue for briefing in his

December 19 Report on the December 16 call, the Arbitrator ignored the fact that Katz had

rejected the Tender, and identified the issue for briefing as follows (Ex. 13, at .pdf 5):

> WHETHER OR NOT THERE IS A REMAINING ARBITRATIBLE DISPUTE AFTER
> THE TENDER OF FULL REIMBURSEMENT TO CLAIMANT OF ANY ALLEGED
> DAMAGES WITHOUT AN ADMISSIONOF LIABILITY.[7]

The AAA issued its decision on Katz's Disqualification Request by letter dated March

17, 2017 (Ex. 14). The following is the sum total of their decision:

> After careful consideration of the parties' contentions, the American Arbitration
> Association (AAA) has determined to reaffirm the appointment of Charles T Bistany as
> arbitrator. This decision is made based upon input from the Case Administrator followed
> by final determination by the appropriate management personnel.

**G.     The Arbitrator Issues His June 2017 Decision**

The Arbitrator's June 2017 Decision (Ex. 2) is discussed in detail in Section B of the

Preliminary Statement above. In addition to that discussion, Katz notes two facts. First, the

decision expressly incorporated and made the October 2016 Decision a part of the Decision (*id.*

at 4). Second, the third paragraph from the end of the Decision states: "The compensation of the

arbitrator in the sum of $13,962.50 of which the sum of $7,962.50 has been paid and the

administrative fees of the American Arbitration Association totaling $1,900.00 shall be borne as

incurred." (*Id.*). Thus, the Arbitrator ended up being paid *by Verizon* total fees more than 9 times

the $1500 the Arbitrator initially agreed to accept and the $1500 limit the AAA confirmed in

rejecting Katz's initial objection to the Arbitrator's appointment (*see* Exs. 9 & 10, and Statement

of Facts, Section C, above)—more than 9 times the fees prescribed by the Consumer Rules.

---

[7] For the record, nothing in the Consumer Rules allows an unaccepted settlement offer to
eliminate Katz's claims. And Section 6 of the arbitration agreement limits settlement offers to
those made *before* the arbitration is commenced (Dkt. No. 51-1, at .pdf 8).

<div align="center">**ARGUMENT**</div>

**I.**     **THE ARBITRATOR'S RULINGS THAT EXCEEDED HIS POWERS OR MANIFESTLY DISREGARDED THE LAW MUST BE VACATED UNDER FAA § 10(a)(4)**

FAA § 10(a)(4) requires an arbitrator's ruling to be vacated where the arbitrator exceeded his powers in making it. *See also Jock,* 646 F.3d at 121. The Second Circuit also recognizes "manifest disregard" as a "judicial gloss" on § 10(a)(4). *See Schwartz v. Merrill Lynch & Co., Inc,* 655 F.3d 444, 451 (2d Cir. 2011). Manifest disregard requires that a legal ruling be vacated where the arbitrator has ignored "well defined, explicit, and clearly applicable" governing law that the arbitrator knew about "but decided to ignore it or pay no attention to it." *Jock.* 646 F.3d at 121 n.1. Exceeding his powers and manifest disregard are two distinct inquiries for determining whether vacatur is appropriate. *Id.*

**A.**     **The Arbitrator Exceeded His Authority In His October 2016 Decision By Ruling On The Legal Merits Of Katz's GBL § 349 Claim For General Injunctive Relief After Ruling That Section 3 Of The Arbitration Agreement Prohibited The Arbitrator From Awarding It**

As discussed in detail in Preliminary Statement Section A above, the Arbitrator held in the October 2016 Decision that Section 3 of the arbitration agreement was enforceable and prohibited him from awarding the general injunctive relief sought by Katz under GBL § 349 or any relief "for the benefit anyone who is not a party to this arbitration." October 2016 Decision, at 3. Nevertheless, the Arbitrator decided and held, as a matter of law, that Katz "lacks the authority under GBL § 349 to seek injunctive relief on behalf of others not a party to this arbitration." October 2016 Decision, at 2.

A number of courts analyzing comparable restrictions in arbitration agreements on the authority of the arbitrator to award injunctive relief for the benefit of anyone other than a party to the arbitration have held that this restriction on the relief the arbitrator may award necessarily

<div align="center">16</div>

means that a claim like Katz's for general injunctive relief is not arbitrable. *See AT&T Mobility LLC v. Fisher,* 11 Civ. 2245*,* 2011 WL 5169349, at \*9 (D. Md. Oct. 28, 2011); *AT&T Mobility LLC v. Bernardi,* 11 Civ. 03992, 11 Civ. 04412, 2011 WL 5079549, at \*3 (N.D. Cal. Oct. 26, 2011)*; AT&T Mobility LLC v. Gonnello,* 11 Civ. 5636, 2011 WL 4716617, at \*4 (S.D.N.Y. Oct. 7, 2011) (Castel, J.). *Cf. AT&T Mobility LLC v. Smith,* 11 Civ. 5157, 2011 WL 5924460, at \*4 (E.D. Pa. Oct. 7, 2011) ("Fairly read, this clause addresses the remedies an arbitrator may award, not whether a particular dispute may be properly arbitrated in the first instance[.]"). In *Schatz v. Cellco P'shp,* 842 F. Supp. 2d 594, 604 (S.D.N.Y. 2012), Judge Holwell agreed with the *Smith* court's interpretation of the provision in relation to the issue of arbitrability. *But see Emilio v. Sprint Spectrum, L.P.,* 508 F. App'x 3, 6 n.2 (2d Cir. 2013) ("We express no opinion on the merits of Schatz's view of the law.").

That the Arbitrator's ruling that Section 3 is enforceable precludes the arbitrability of the merits of Katz's right to pursue general injunctive relief makes complete sense. If the Arbitrator had ruled on the merits that GBL § 349 *did* allow Katz to obtain general injunctive relief, he could not have awarded it, and the claim would have to return to this Court to determine the relevant facts and scope of the injunctive relief to be issued—the antithesis of "arbitrability." The fact that the Arbitrator went the other way and would not have to issue the general injunctive relief he was precluded from issuing under Section 3 anyway would make "arbitrability" depend on the outcome of the legal ruling, rather than the terms of the arbitration agreement.

> **B.**  **Assuming Arguendo The Arbitrator Had The Authority To Rule On The Legal Merits of Katz's Entitlement To Pursue General Injunctive Relief Under GBL § 349, His Ruling Manifestly Disregarded The Law**

The Arbitrator's sole stated reason for his holding that Katz was not entitled as a matter of law to an award of general injunctive relief under GBL § 349 was that "[w]hile Section 349 of

the GBL grants authority to the Attorney General of New York State to seek relief on behalf of all Verizon customers, there is no language in the statute granting the same power to individuals." October 2016 Decision, at 2.

*There is no legal authority under § 349 supporting the Arbitrator's conclusion.* And to the contrary, Katz directed the Arbitrator to a veritable mountain of authority that supported his right to the relief. *See* Ex. 15 (excerpts of Katz's Sept. 24, 2016 Brief in Opposition to Verizon Motion for Summary Disposition).

The authority included two decisions awarding the general injunctive relief (Ex. 15 at 16-17): *Barkley v. United Homes, LLC*, 848 F. Supp. 2d 248, 274 (E.D.N.Y. 2012) (rejecting Arbitrator's reasoning and holding "[t]he fact that individual plaintiffs, and not a government entity, are seeking the injunction is irrelevant"); *McDonald v. North Shore Yacht Sales, Inc.,* 513 N.Y.S.2d 590 (Sup. Ct. Nassau County 1987) (granting preliminary injunction for general injunctive relief under GBL § 350, which prevents deceptive advertising in New York State).

The authority included the New York Court of Appeals decision in *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d 20, 24-25 (1995) (discussing and quoting legislative history regarding 1980 amendment of § 349 to create private right of action) (Ex. 15, at 10-11, 14, 17-18), *and* the Brooklyn Law Review Note written shortly after the enactment of the 1980 amendment and cited with approval in *Oswego* that expressly supports the private right to obtain general injunctive relief (Ex. 15, at 15).

And the authority included New York decisions confirming that GBL § 349 was a remedial statute required to be liberally construed under New York law, *see N.Y. Pub. Interest Research Group, Inc. v. Ins. Info. Inst.,* 531 N.Y.S.2d 1002, 1006 (Sup. Ct. N.Y. County 1988), and *Sulner v. General Acc. Fire & Life Assur. Corp.,* 471 N.Y.S.2d 794, 797 (Sup. Ct. N.Y.

County 1984) (Baer, J.) (1980 amendment enacted so consumer *"might now stand in the shoes of the Attorney General and bring similar lawsuits"*) (emphasis added).

Without some basis in law for the Arbitrator's holding when all of the relevant law under GBL § 349 goes the other way, his holding is just dispensing prohibited "industrial justice." *See Stolt-Nielsen,* 559 U.S. at 671.

### C.   The Arbitrator's Ruling Binding Katz To Verizon's Rejected, Incomplete Tender, And Consequently Denying Katz's Contract, GBL § 349 And Accounting Claims, Manifestly Disregarded The Law

The Arbitrator ruled that "Verizon "shall pay [Katz] the sum of $1500, without interest," based on Verizon's Tender to Katz of a check of $1500 "without prejudice" and without "admit[ting] liability with regard to any of the claims asserted" by Katz in the arbitration (s*ee* Ex. 4)—even though it was undisputed that Katz had "rejected and refused" the Tender, and that the Tender was "incomplete relief since it does not contain individual injunctive relief and an award of attorney fees to [Katz]." June 2017 Decision, at 3, *see also* Ex. 4.

There is no law that allows the Arbitrator to force the Tender on Katz, period. The Arbitrator didn't even attempt a rationale, except that "[Katz] has not disputed the amount in dispute being greater than $1,500.00." June 2017 Decision, at 3. He doesn't even address the issue as he framed it, including the fact that the Tender was without "an admission of liability," or the consequences of the fact that it was incomplete. He doesn't address the two controlling cases to which Katz directed him (Ex. 5). *See Geismann v. ZocDoc, Inc.,* 850 F.3d 507, 514 (2d Cir. 2017) (plaintiff cannot be bound by offer of judgment that had been rejected and did "nothing to satisfy the demand for injunctive relief"); *Horn Waterproofing Corp. v. Bushwick Iron & Steel Co.*, 66 N.Y.2d 321, 331-32 (1985) (even assuming accord and satisfaction applies to GBL § 349 claim as well as contract claim, acceptance of tender under protest "preclude[s] an

accord and satisfaction or any other prejudice to the rights thus reserved"). Nor does the

Arbitrator address the fact that under Section 6 of the arbitration agreement, any settlement offer

by Verizon had to *precede* the arbitration (Dkt. No. 51-1, at .pdf 8).

This is manifest disregard. And as a consequence, the merits of Katz's individual claims

for breach of contract, violations of GBL 349 and the accounting were never adjudicated.

### D.       The Arbitrator's Attorney's Fees Award To Katz Exceeded His Powers

Verizon's February 10, 2017 Motion for Judgment on the Pleadings sought the following

relief: "[T]he Arbitrator should grant Verizon Wireless's motion for judgment on the pleadings,

enter an award in favor of Katz consistent with the terms of the Tender Letter, and dismiss the

case as moot" (Ex. 16, at .pdf 3, 5, 6). With respect to attorney's fees, the Tender stated:

> Verizon Wireless will also tender payment for Mr. Katz' reasonable attorney's fees related
> to his individual claim in this arbitration proceeding, upon [Katz's counsel] providing
> that information. In the event that we cannot reach agreement on the appropriate amount
> of fees, that issue would be decided by the arbitrator.

The Arbitrator awarded Katz attorney's fees in the amount of $500 (June 2017 Decision,

at 4), without requesting from Katz or being provided any documentation of those fees, and

without the parties having an attempt to reach agreement. His attorney's fees award violated the

terms of the Tender, and thus the Arbitrator again exceeded his powers and the fee award must

be vacated.

## II.    THE JUNE 2017 DECISION MUST BE VACATED IN ITS ENTIRETY UNDER
##        FAA §§ 10(a)(3) AND 10(a)(2)

Under FAA § 10(a)(3), an award may be vacated "where the arbitrators were guilty of

misconduct … in refusing to hear evidence pertinent and material to the controversy; or of any

other misbehavior by which the rights of any party have been prejudiced." As detailed in the

Statement of Facts, Section F, above, the Arbitrator denied Katz's right to take even limited

discovery on the issue whether Verizon's Administrative Charge included non-governmental

mandated and non-government related costs—the gravamen and essential basis for Katz's breach

of contract and GBL § 349 claims—with the Arbitrator stating: "*I know why you want it. You*

*want it so you can use it in another case against Verizon*" (emphasis added).[8]

      Standing alone, the Arbitrator's refusal to allow Katz to gather and submit this evidence

eliminated Katz's ability to prove his damage claims in the arbitration. More importantly, the

Arbitrator's denial of Katz's right to prove his claims has prejudiced Katz by depriving him of a

confirmable ruling if the Court determines that his entitlement to general injunctive relief is not

arbitrable in light of the Arbitrator's ruling that Section 3 of the arbitration agreement is

enforceable. And binding Katz to the rejected and incomplete Tender without any legal authority

and contrary to controlling law was, with all due respect, a transparent tactic to avoid Katz's

right to the evidence and to eliminate Katz's right and ability to litigate his claims. And this is all

in addition to all of the Arbitrator's objectionable conduct during the December 16, 2016

conference detailed in Ex. 12 and the Statement of Facts, Section F, above. The Arbitrator's

conduct "amounts to fundamental unfairness and misconduct sufficient to vacate the award"

under § 10(a)(3). *In re Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 21 (2d Cir. 1997).

      FAA § 10(a)(2) also provides a ground for vacating the award—"where there was evident

partiality" on the part of the Arbitrator. Katz is aware that some cases evaluate "evident

partiality" in terms of some corrupting relationship between the Arbitrator and one party. *See*

*Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.,* 668 F.3d 60, 74 (2d Cir.

2012). But sometimes the Court can consider the totality of the circumstances. *See Kolel Beth*

*Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust,* 729 F.3d 99, 104 (2d Cir. 2013)

---

[8] The Arbitrator also awarded Katz attorney's fees contrary to the terms of the Tender and
without any evidence. *See* Argument I(D) above, and the June 2017 Decision, at 4.

("[p]roof of actual bias is not required" and "partiality can be inferred from objective facts inconsistent with impartiality") (quoting *Scandinavian,* 668 F.3d at 72)*.* Katz respectfully submits that this is such a case. Further, the pecuniary relationship between the Arbitrator and Verizon, the payor of his fees that ended up being more than 9 times the amount the Arbitrator had agreed to in order to arbitrate the case (for all of four weeks until he changed his and the AAA's mind) cannot be ignored.

Either standing alone, or in concert with § 10(a)(3), the Arbitrator's conduct has gone far past the line dividing proper conduct from misconduct. The appropriate remedy is to vacate the June 2017 Decision in its entirety.

**III.    THE COURT SHOULD VACATE THOSE PARTS OF THE OCTOBER 2016 AND JUNE 2017 DECISIONS THAT CONSTITUTE RULINGS OF LAW, ON THE GROUND THAT KATZ'S INVOLUNTARY CONSENT TO THE STANDARD OF REVIEW IMPOSED BY CONGRESS UNDER FAA §10(a)(4) VIOLATES KATZ'S CONSTITUTIONAL RIGHT TO JUDICIAL REVIEW WITH RESPECT TO QUESTIONS OF LAW REQUIRED UNDER THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT**

"[T]he constitutional requirement of due process is a requirement of judicial process." *Crowell v. Benson*, 285 U.S. 22, 87 (1932) (Brandeis, J., dissenting). *See also id.* at 46 (due process not violated when rulings on questions of law are reviewable by court).

The Arbitrator's October 2016 and June 2017 Decisions include three principal legal holdings not derived from the Arbitrator's construction of the arbitration agreement: (i) GBL § 349 does not authorize Katz to assert a claim for general injunctive relief; (ii) Katz is not entitled to individual injunctive relief under GBL § 349 with respect to Verizon's continuing imposition of improper components of the Administrative Charge (if any), even though he is paying the charges and they are being imposed in part on his own phone, because the account is not in his name but his non-marital partner's name; and (iii) Katz can be bound by Verizon's rejected and

incomplete "without prejudice" Tender. The first and third issues are subject to "exceeds powers and/or manifest disregard" challenges in Argument I, above, but the ruling regarding Katz's right to individual injunctive relief is not subject to such a challenge, and none is asserted by Katz.

FAA § 10(a)(4) precludes any meaningful exercise of judicial review to which Katz is otherwise entitled under the Fifth Amendment in connection with his legal claims. Under § 10(a)(4), an award "should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached." *T.Co. Metals, LLC v. Dempsey Pipe & Supply, Inc.,* 592 F.3d 329, 339 (2d Cir. 2010). Furthermore, "[e]ven where explanation for an award is deficient or nonexistent," the Court should "confirm it if a justifiable ground for the decision can be inferred from the facts of the case." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S,* 333 F.3d 383, 390 (2d Cir. 2003). And the standard of review under § 10(a)(4)— which in no way constitutes "judicial process" or "judicial review" as required by the Due Process Clause of the Fifth Amendment—is imposed by Congress in connection with all arbitrations under the FAA, and cannot be varied by contract or agreement of the parties. *Hall Street Assoc.,* 552 U.S. at 583.[9]

Simply stated, "the arbitration system is an inferior system of justice, structured without due process, rules of evidence, accountability of judgment and rules of law." *Moseley, Hallgarten, Estabrook, & Weeden, Inc. v. Ellis,* 849 F.2d 264, 268 (7th Cir.1988), *quoting Stroh Container Co. v. Delphi Industries, Inc.,* 783 F.2d 743, 751 n.12 (8th Cir. 1986). But even though the standard of review imposed by Congress under FAA § 10(a)(4) is *not* the judicial process required by due process, that judicial process concededly can be waived. Katz, however,

---

[9] The fact that it is Congress and Congress alone who has mandated this standard of review under § 10(a)(4) that cannot be contractually altered by the parties to the arbitration agreement satisfies the requirement for "state action" in connection with the specific constitutional challenge mounted by Katz in his motion to vacate. The § 10(a)(4) standard of review is *not* a "private decision."

respectfully submits that this waiver must be "voluntary." And it is undisputable that Katz did not voluntarily waive his Fifth Amendment Due Process right. *See* Dkt. No. 29, ¶ 7(Katz's March 19, 2013 Declaration).

As noted in the Preliminary Statement, the decisions of three circuit courts addressing the issue all rely, in significant part, on the "voluntariness" of the agreement to arbitrate to reject the Due Process Fifth Amendment challenges. *See Todd Shipyards Corp.,* 943 F.2d at 1063-64 (focusing on voluntary agreement to arbitration to reject due process challenge); *Davis,* 59 F.3d at 1193 (same, citing *Todd*); and *Bowen,* 254 F.3d at 940 (10th Cir. 2001) (same, citing *Todd*). In contrast, *none* of the "knowing and voluntary" cases cited in the Court's 2013 decision, 2013 WL 6621022, at *13, mentions "due process," let alone discusses the requirement for "voluntariness" in connection with the waiver of Due Process under the Fifth Amendment.

Further, the recent decision of the Supreme Court in *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1948 (2015), which was issued after this Court's December 2013 decision in this case (Dkt. No. 39), confirms by analogy that the "knowing and voluntary" standard requires that Katz "was made aware of the need for consent *and the right to refuse it*" (emphasis added)—undisputedly absent in this case. This standard is constitutionally mandated, and does not depend on the enforceability of the contract under state law. Katz submits that, if not directly controlling, *Wellness* must strongly inform the Court's analysis of the proper standard for a meaningful waiver of Katz's right to Due Process.

Finally, it is instructive to see when an agreement to arbitrate *is* "knowing and voluntary." Commodities Futures Trading Commission Regulations 17 C.F.R. §§ 166.5(b) & (c) govern the use of arbitral dispute resolution with customers. Section 166.5(b) requires that "the use by customers of dispute settlement procedures shall be voluntary." Under § 166.5(c)(1),

"[s]igning the agreement must not be made a condition for the customer to utilize the services offered by the Commission registrant." And § 166.5(c)(7) requires extensive cautionary language in large boldface type making it clear that consent to arbitration must "be voluntary," and *not* a condition of opening an account.

Verizon's arbitration agreement fails these tests, including the requirement under *Wellness* that voluntariness must include "the right to refuse." Because Katz was given no right to refuse arbitration and still continue his service with Verizon, any involuntary waiver of his Due Process right under the Fifth Amendment to judicial review of his legal claims, and any involuntary imposition of the standard established by Congress in § 10(a)(4), is unconstitutional.

## CONCLUSION

For all of the reasons stated herein, Katz's motion under FAA §§ 9 & 10 should be granted in its entirety by the Court.

Dated:  September 27, 2017

<div style="margin-left:40%">

LAW OFFICES OF
WILLIAM R. WEINSTEIN
By:   s/ William R. Weinstein
William R. Weinstein
199 Main Street, 4th Floor
White Plains, New York 10601
(914) 997-2205
wrw@wweinsteinlaw.com

ATTORNEY FOR PLAINTIFF
MICHAEL A. KATZ

</div>

25